274 P.2d 986

R. D. BISCHOFF, Plaintiff-Appellant,

v.

Kent STEELE, Defendant-Respondent.

No. 8163.

Supreme Court of Idaho.

Oct. 7, 1954.

A. A. Merrill, Idaho Falls, for appellant.

E. H. Casterlin, Pocatello, Fred H. Snook, Salmon, for respondent.

TAYLOR, Justice.

Sometime in April, 1953, one Moore, acting as a "salesman" for the Star Roofing Company of Salt Lake City, Utah, solicited the defendant to enter into a contract with the roofing company for the remodeling and repair of the defendant's house. The defendant considered the price excessive. As an inducement to procure his agreement to the contract, Moore offered to buy cattle from the defendant at 30¢ per pound up' to a total amount of $1,200 or more. At that time the market price for such cattle was 15¢ per pound. Moore was to pay defendant one-half of what the cattle would yield at 30¢ per pound in cash, and credit the contract for house repairs with the other half. Moore and defendant having reached an agreement, the defendant executed a contract for the home improvements, and obligated himself to pay to the bank which financed the contract the sum of $2,388.66.

On May 23, 1953, Moore came to defendant's ranch with one Plum, who was a cattle buyer and agent of the plaintiff. At that time, after inspecting seven head of defendant's cattle, Plum agreed to assume Moore's obligation to purchase the cattle from the defendant and agreed to pay $600 for the seven head.

From this point on the parties are in disagreement as to what transpired. Plaintiff's agent, Plum, testified that he made a check on plaintiff's account for $600, payable to Moore, and that in defendant's presence and at his request he handed the check to Moore "so he [Moore] could buy some lumber for his [defendant's] house." Plum also testified that at the same time Moore executed and delivered to defendant his personal check for $600. Plum then drafted a bill of sale which the defendant signed at Plum's request. The bill of sale is as follows:

"This is to certify that we have this 23 day of May, 1953 Sold to Chas Plum for and in consideration of the sum of $600.00 receipt of which is hereby acknowledged,
"1 Black Cow HE R R
"1 Black St    " " "
"1 Rone Cow no Brand
"1 Red St    HE R R
"1 Black White face Hefer HE R R
"1 Black Hefer HE R R
"1 White face cow HE R R
"We hereby warrant full title, and will defend the sale of said animal.
/s/ Kent Steele"

The defendant and his wife, as witnesses, denied that defendant authorized Plum to make payment to Moore; that any check was made by Plum and delivered to Moore in their presence. They testified they knew nothing of the payment to Moore until May 27th when they went to Plum's place of business at Leadore to inquire why he had not come for the cattle on Monday or Tuesday as agreed; that Plum then advised them that he had paid Moore for the cattle and that if they had arrived earlier he could have stopped the check; that defendant then notified Plum that he would not deliver the cattle until he was paid for them.

On the evening of June 2nd, Moore and Plum came to defendant's house to arrange for delivery of the cattle, being again advised by defendant that they could not have them until he received payment. Moore then drew his check for $600 and gave it to defendant. This check is in evidence and and bears the endorsements: "Hold until after Job is complete" and "Account Closed 5-28-53". On June 3rd, the bank on which Moore's check was drawn having advised defendant that the check was "no good", the defendant again went to Plum, advised him that the check was worthless and that he could not get the cattle until the price was paid.

The plaintiff testified that on May 24th, his bank at Idaho Falls advised him that Moore was in the bank for the purpose of cashing the check given him by Plum; that plaintiff went to the bank and, for the purpose of making a record of the check in his bank book, took up the check held by Moore and gave him another; that Moore then cashed the check, for the purpose of getting money to pay for a truckload of lumber which he had procured at an Idaho Falls lumber yard, but which the lumber com-

pany would not release without cash payment. The check which the plaintiff personally issued to Moore is in evidence and is perforated, "Paid 5–26–52". Since May 24th was a Sunday, it appears that plaintiff was mistaken as to the date.

Plaintiff brought this action against the defendant, claiming damages in the sum of $600, for his refusal to deliver the cattle. The jury returned a verdict for the defendant, upon which judgment was entered, and this appeal followed.

Of the numerous assignments of error we will consider only those which are supported in the brief and which appear to have merit.

■ Throughout the trial appellant objected to any evidence on the part of the defendant to establish the fact that defendant had not received payment for the cattle, on the ground that such evidence was incompetent to vary or contradict the terms of the bill of sale. The admission of such evidence is the basis of several of the assignments of error. It has long been the rule in this state that a simple receipt is only prima facie evidence of the truth of recitals therein, and parol evidence is admissible to explain or contradict it. Berryman v. Dore, 43 Idaho 327, 251 P. 757; Idaho Gold Dredging Corp. v. Boise Payette Lbr., Co., 62 Idaho 683, 115 P.2d 401; McCarty v. Sauer, 64 Idaho 748, 136 P.2d 742; 20 Am. Jur., Evidence, § 1111.

"* * * in so far as a bill of sale partakes of the nature of a receipt or is simply declaratory of a fact, it may be explained or perhaps contradicted, * * *." 32 C.J.S., Evidence, § 896. The recital in the bill of sale, "receipt of which is hereby acknowledged," constitutes nothing more than a simple receipt and does not involve any contractual element of the bill of sale. The admission of the evidence objected to was not error.

■ Other assignments challenge certain instructions of the court presenting to the jury the theory of a sale by defendant to plaintiff through Plum. It is plaintiff's contention that he bought the cattle from Moore, and that Moore had bought them from the defendant. There is an inconsistency in this contention. Plaintiff relies on the bill of sale as a written contract binding the defendant as a paid seller, but refuses to be bound thereby as a buyer from defendant. In other words, the plaintiff contends he should be permitted to vary the terms of the bill of sale by showing that Moore, not the defendant, was the seller, but defendant should not be permitted to vary or contradict its terms by denying payment. Plaintiff recognized his burden of proof by seeking to show that he paid the purchase price to Moore at the request, and with the knowledge and consent of defendant, and that Moore had paid defendant. Of course, if plaintiff, through his agent Plum, had made the payment to Moore at defendant's request, that would be equivalent to payment directly to the defendant. As to the effect of payment to Moore made in the presence

of the defendant, the court instructed the jury as follows:

"If you believe from a preponderance of the evidence that the Bill of Sale was completed when it was delivered to the plaintiff's agent, Charles Plum, and that Charles Plum gave to Moore in the presence of the defendant the check for $600.00, Exhibit 'A', and that the defendant executed the Bill of Sale and delivered it to Plum at that time without any protest or warning to Plum that the defendant was going to claim a lien on the cattle as an unpaid seller, you are instructed that the defendant cannot do that; cannot now, if you find those facts to be true, deny the Bill of Sale, and under such circumstances the plaintiff would be entitled to recover from the defendant the $600.00 which he paid to Moore."

We need not determine whether this is a correct statement of the legal effect of the delivery of the check to Moore if made in the presence of the defendant. It is favorable to the appellant, hence not erroneous as to him.

By instruction No. 6, the jury was advised that if, on May 23, 1953, Moore gave his check to the defendant as claimed by the plaintiff, and the check was "accepted by the defendant as payment for the cattle, or if the defendant had some arrangement for extending credit to Moore at that time and executed the bill of sale to the plaintiff acknowledging receipt of $600 recited therein, then the defendant would be a paid seller, or if he were not paid, he would at least be paid so far as the plaintiff was concerned." This instruction was also favorable to the appellant.

In instruction No. 7, the court made reference to evidence offered by the plaintiff to the effect that Moore used the proceeds of plaintiff's check to buy materials for use in the improvement of defendant's house, and: "If you find from a preponderance of the evidence that the defendant received lumber or other building materials from Moore to be used in the construction of said house, then to the extent of the value of such material the defendant would be a paid seller and the plaintiff would be entitled to recover from the defendant the value of the lumber or building materials so delivered to the defendant by Moore." It is open to question whether there is sufficient competent evidence to show that any materials were purchased by Moore, or if so, that such materials were used in the improvement of defendant's house. The instruction again is favorable to the appellant.

By these quoted instructions, any possible view of the evidence which would permit a recovery by the plaintiff was submitted to the jury.

Appellant also assigns the ruling of the court permitting defendant to testify that the bill of sale was in blank as to the "600.00" dollars when it was executed by

him, on the ground that the defendant "did not plead that there was any omission or alteration in the instrument." Generally speaking, proof of the alteration of an instrument may be made under a general denial of its execution. 2 Am.Jur., Alteration of Instruments, § 101; 3 C.J.S., Alteration of Instruments, §§ 83, 84. Defendant's answer contains a general denial, admits the execution of the bill of sale and alleges it was not to become effective until the cattle were weighed and delivered. Assuming there may be a question as to the sufficiency of the answer to raise the issue of alteration, it does not appear that appellant was prejudiced by the evidence. There is no dispute between the parties that $600 was the amount agreed upon as the purchase price to be paid by plaintiff. So that, if the figure "600.00" was inserted after delivery, strictly speaking the agreement, evidenced by the bill of sale, was not thereby altered. Also the evidence would appear to be admissible as a part of defendant's proof that he had not, by the executing of the instrument (in blank as to price), acknowledged actual receipt of the $600.

■ Appellant assigns generally and without specification the failure of the court to give his requested instructions Nos. 1 to 7. These requests were refused on the ground that they were covered by instructions given. The first six present appellant's theory that the bill of sale was conclusively binding upon the defendant, and that title to the cattle passed to the plaintiff with the delivery thereof. As we have seen, the bill of sale is not conclusive of the issue of payment. As to the passing of title, if the defendant's testimony were accepted that the cattle were to be weighed and delivered before the transaction was completed, there might be some question as to whether the title passed at the time the instrument was delivered. However, accepting the view that title passed with the bill of sale, if the price was not paid, the defendant would nevertheless be entitled to prevail as unpaid seller. §§ 64–401, 64–402, 64–410, I.C.

■ Appellant's seventh request asked the court to advise the jury that evidence concerning the contract for the repair of defendant's house was immaterial and to be disregarded. The same issue is raised by assignment No. 13, directed to the ruling of the court admitting evidence "relative to paying the bank for the repair job." The evidence was to the effect that defendant had signed a note "to the bank" for the full amount of the repair job. It was admissible as a part of defendant's proof that he had not been paid for the cattle, by credit on the house repair contract, or otherwise. The court refused to permit defendant to testify that Moore furnished no materials for the repair of the house; and that the materials used were furnished by the Star Roofing Company and paid for with proceeds of the bank loan. On the face of it, this appears to be an erroneous ruling favorable to the appellant.

492

We find no reversible error in the record. Judgment affirmed. Costs to respondent.

PORTER, C. J., and GIVENS, THOMAS and KEETON, JJ., concur.