136 P.3d 371

**Nancy Ann SILVA, nka Nancy Ann Brown, Plaintiff–Respondent,**

v.

**Rudy SILVA, Defendant–Appellant.**

No. 31942.

Court of Appeals of Idaho.

May 16, 2006.

Eismann Law Offices, Nampa, for appellant.

Joseph J. Alegria II, Boise, for respondent.

LANSING, Judge.

Rudy Silva appeals a district court decision affirming a magistrate order modifying the child custody provisions of a divorce decree. Rudy also challenges the district court's award of attorney fees on the intermediate appeal.

## I.

### BACKGROUND

Rudy and his ex-wife, Nancy Ann Brown, were divorced on February 24, 2000. During their marriage they had three children born in 1992, 1996, and 1999. In the initial divorce proceedings, Rudy and Nancy stipulated to equally share physical custody of the children. This accommodated their work schedules as both worked the night shift, 6 p.m. to 6 a.m., at Micron Technology, but on different nights. One parent could therefore tend to the children while the other parent was working. Nancy thereafter changed jobs to the night shift at the Ada County Sheriff's Office on a schedule that overlapped with Rudy's. During 2001 Nancy had very little contact with the children. During that time, Rudy was their primary caregiver, although he had substantial help from a daycare provider who kept the children at her home on the nights when Rudy had to work. The children stayed overnight with the daycare provider thirteen to fifteen nights per month.

In March 2003, for reasons that are not clear, Rudy no longer qualified for state assistance in paying for daycare, and from April to May 2003, the children stayed primarily with Nancy. After a disagreement in which Nancy asked Rudy for more financial

support, the parties returned to the same fifty-fifty custody schedule that had been put in place when they worked opposite night shifts at Micron. As a result, Rudy continued to have the children mostly on his days off, while Nancy had the children primarily on days that she worked. It appears that Nancy's new husband, who held a day job, spent a considerable amount of time caring for the children. Both Rudy and Nancy also relied heavily on Nancy's parents and other friends to care for the children when work schedules interfered. During this time, Rudy and Nancy's relationship deteriorated and they disagreed about where their children should be enrolled in school.

In July 2003, Nancy filed a motion to modify the custody arrangement to give her primary physical custody of the children, and the magistrate held an evidentiary hearing on the matter in February 2004. At the end of the first day of testimony the magistrate expressed frustration at the parties' nocturnal work schedules, which interfered with their ability to care for the children in the hours before and after school. He said:

> I would encourage both of you to seek changes to your either employment schedule or the status of your employment. The evidence I've heard so far, I'm gonna be up front with you about, indicates to me that these children don't have two primary parental figures in their lives. You're only available a couple of nights a week. You're available during the one times of the day that they don't need parents, which is when they're at school, and you're not available at any other time. Your kids have been raised by a step-dad, daycare providers, friends and grandparents. That's who has raised your children so far.
>
> Now you're in front of me asking to be awarded primary custody. And you know what? It's gonna be probably the first among you who steps up, who wants to be there, available to them when they get out of school, when they're in bed, when they need help with their homework, when they need dinner and when they need breakfast. You don't want to do that, then this is gonna be a real toss-up, I can tell you right now. It's gonna be very difficult for me to

decide. It will be easier for me to decide if one of you has made those changes to your schedule. And if both of you have made those changes to your schedule, I'll be back to be making a difficult decision, but at least I will know that your children are going to be raised by one of you because right now, no matter what you say and what I've heard from the witnesses so far, you have close relationships with your children but you're not the one doing the raising.

When the hearing resumed a month later, Nancy informed the court that she was attempting to change her work schedule. She said that she was slated to begin working the day shift in July, apparently as part of a regular departmental rotation, and that the schedule would remain in place for the following six months. She also said that she was pursuing a position that required only day shifts. Rudy was continuing, as before, to work twelve-hour shifts from 6 p.m. to 6 a.m. on alternating Wednesdays and each Thursday, Friday and Saturday. Rudy informed the magistrate that his supervisor had told him that changing to a day shift would be difficult or impossible because he was one of only four experts in the area where he worked and was the only one available for his shift. Changing to a day shift would also reduce his salary by two dollars an hour, and he believed there were no other comparable jobs available at other companies. However, Rudy admitted that he had only informally addressed a schedule change and had not submitted a formal request to his employer as required by company policy.

The court ultimately awarded primary physical custody to Nancy. In doing so, the magistrate court considered several factors. The court found that absent the work schedule issue, there was a general parity in the positives and negatives regarding each parent, but that the scale would probably tip toward Rudy. However, the court said that Nancy's efforts to pursue daytime work weighed significantly in her favor. The court determined that Rudy was "incapable of providing care for the children on a primary basis," and concluded that Nancy should be awarded primary physical custody of the chil-

dren because living with her would create a more predictable and stable home environment. The court ordered that the parties would continue to share joint physical custody, but that the children would live primarily with Nancy. Rudy received physical custody that reflected his time off work: Sunday afternoon through Tuesday, Thursday afternoons, Saturdays in the summer when Nancy is at work, and various holidays. The court also awarded Nancy sole legal custody over decisions on school enrollment, with joint legal custody over all other matters.

Rudy appealed to the district court, which affirmed the magistrate court and awarded attorney fees to Nancy. Rudy again appeals, contending that the magistrate improperly considered or too heavily weighed the work schedule factor, that the magistrate erred in awarding Nancy sole legal custody over school enrollment decisions, and that the district court erred in awarding attorney fees on the intermediate appeal.

## II.

## DISCUSSION

■ Where there has been an intermediate appeal to the district court, as here, we base our review upon the record of the magistrate proceedings and render our decision independent of, but with due regard for, the district court's decision. *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993); *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). Decisions concerning the care, custody and education of minor children are committed to the sound discretion of the trial court and, in the absence of a clear abuse of discretion, that court's judgment will not be disturbed on appeal. *Osteraas v. Osteraas,* 124 Idaho 350, 352, 859 P.2d 948, 950 (1993); *Biggers v. Biggers,* 103 Idaho 550, 555, 650 P.2d 692, 697 (1982); *Moye v. Moye,* 102 Idaho 170, 171, 627 P.2d 799, 800 (1981). An abuse of discretion occurs when the evidence is insufficient to support a trial court's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification. *McGriff v. McGriff,* 140 Idaho 642, 645–646, 99 P.3d 111, 114–15

(2004). However, we do not substitute our own view of the evidence for that of the trial court, nor determine the credibility of the witnesses. *Brammer v. Brammer,* 93 Idaho 671, 674, 471 P.2d 58, 61 (1970). Moreover, in considering findings of fact made by the trial court, we must review the evidence in the light most favorable to the party who prevailed at trial. *Pieper v. Pieper,* 125 Idaho 667, 669, 873 P.2d 921, 923 (Ct.App.1994).

■ In determining custody, whether in the initial divorce decree or a subsequent modification, the welfare and best interest of the children are of paramount importance. *Roeh v. Roeh,* 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct.App.1987); *Schmitt v. Schmitt,* 83 Idaho 300, 305, 362 P.2d 884, 887 (1961); *Miller v. Mangus,* 126 Idaho 876, 878, 893 P.2d 823, 825 (Ct.App.1995). The controlling statute, I.C. § 32–717, provides a non-exhaustive list of factors for the trial court to consider in making this determination. Included in that list are: the wishes of the child; the wishes of the parents; the interaction of the child with the parents and siblings; the child's adjustment to his or her home, school and community; the mental and physical health and integrity of all individuals involved; the need to promote continuity and stability in the life of the child; and the presence of domestic violence. I.C. § 32–717(1)(a)–(g). *See Dymitro v. Dymitro,* 129 Idaho 527, 529, 927 P.2d 917, 919 (Ct.App. 1996). Although the court "shall consider all relevant factors," I.C. § 32–717, the trial court must avoid considering irrelevant factors, *Roeh,* 113 Idaho at 558, 746 P.2d at 1017, and avoid assigning too much weight to any particular factor, *Moye,* 102 Idaho at 172, 627 P.2d at 801.

### A. Modification of Physical Custody

■ The first issue on this appeal is whether the magistrate court improperly considered the parties' employment schedules and need for daycare. Rudy urges us to follow the reasoning of several jurisdictions that have held consideration of such factors to be generally impermissible. The California Supreme Court, for example, has held that a trial court erred in finding that a parent who worked and therefore entrusted

the child to babysitters provided inferior care compared to a non-working parent or one who would be able to leave the child with a stepparent. *Burchard v. Garay*, 42 Cal.3d 531, 229 Cal.Rptr. 800, 724 P.2d 486, 492 (1986). In *In re Loyd*, 106 Cal.App.4th 754, 131 Cal.Rptr.2d 80 (2003), another California appellate court held that the trial court's reliance on the father's work schedule was improper because it had assumed, without any supporting evidence, that the mother could provide better care for the children solely because she was able to remain at home with them during the day. Similarly, Pennsylvania appellate courts have articulated a rule that "a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence." *Gerber v. Gerber*, 337 Pa.Super. 580, 487 A.2d 413, 416 (1985). *See also K.L.H. v. G.D.H.*, 318 Pa.Super. 330, 464 A.2d 1368 (1983) (holding mother's work schedule should not result in change of custody because the child care arrangement was acceptable, even when father's spouse was available to care for the children); *Jon M.W. v. Brenda K.*, 279 Pa.Super. 50, 420 A.2d 738 (1980) (change in custody to mother was inappropriately based on a finding that father often needed babysitters to watch the children). Other jurisdictions that have disapproved reliance on work schedules as a determinative factor for child custody include Alaska, New York and Vermont. *West v. West*, 21 P.3d 838 (Alaska 2001) (holding trial court erroneously relied on the assumption that, all other things being equal, the two-parent household should have the advantage because it offered the child more in-home care); *Wellman v. Dutch*, 198 A.D.2d 791, 604 N.Y.S.2d 381 (N.Y.App.Div.1993) (holding that in granting custody to the father, the trial court erroneously relied on the fact that when in the mother's custody, the child was cared for during the day by an aunt, while in the father's care his spouse would be home all day to care for the child); *Brennan v. Brennan*, 165 Vt. 525, 685 A.2d 1104 (1996) (holding the fact that the child would spend more time in daycare when living with the mother than with the father and his girlfriend was insufficient to support an award of custody to the father).

Other courts, however, have come to a different conclusion. In *Ritter v. Ritter*, 234 Neb. 203, 213, 450 N.W.2d 204 (1990), the court held that the "time which a parent is able to devote to a child is a consideration in resolving a child custody question in a marital dissolution proceeding," which necessarily involves an inquiry into the parents' work schedules and need for outside child care. The court there took into account the father's 9 p.m. to 8 a.m. work schedule and need for a babysitter during those hours. Similarly, an Illinois court has commented:

> Harmony in and stability of the children's home life, and the relative ability of parents to devote sufficient time to the children are important factors in resolution of custody disputes.... [I]t appears that if custody were awarded to [the working parent], the children would spend as much of their waking hours with babysitters as with their [parent. The working parent] should not, of course, be penalized for attempting to earn a living, but we must reemphasize that it is the children's best interests which are paramount.

*In re Stuart*, 141 Ill.App.3d 314, 95 Ill.Dec. 770, 490 N.E.2d 243, 249 (1986) (citations omitted). Other courts have also looked to work schedules and the availability of the parents as a part of the overall circumstances that bear upon the best interests of the child, such as the stability of the home environment and the parent's ability to provide for the child's daily needs. *See Bryant v. Bryant*, 739 So.2d 53 (Ala.Civ.App.1999) (granting custody to the mother when the nature of the father's employment prevents him from being in town during the week); *Collier v. Collier*, 698 So.2d 150 (Ala.Civ.App.1997) (affirming a determination that the mother was better available to provide for the learning impaired child because she had a more stable work schedule that allowed her more time to spend with the child); *Maloblocki v. Maloblocki*, 646 N.E.2d 358 (Ind.Ct.App.1995) (holding that the trial court should not have awarded custody to the mother, who maintained an erratic work schedule often requiring others to care for the child, when the father worked during the day and was available to care for the child in the evenings and

on weekends); *In re Muell,* 408 N.W.2d 774 (Iowa Ct.App.1987) (concluding that because the father's job required him to be absent from the home for extended periods of time, the mother was more capable of providing the children a stable and suitable environment); *Del Papa v. Del Papa,* 172 A.D.2d 798, 569 N.Y.S.2d 170 (N.Y.App.Div.1991) (affirming primary custody with mother, who had been primary caregiver, worked near the children's school and left work shortly after school ended, whereas father had a long work schedule and the children would be unattended by him for a significant amount of time); *Diane L. v. Richard L.,* 151 A.D.2d 760, 542 N.Y.S.2d 783 (N.Y.App.Div.1989) (holding father's intense farm work schedule which often required him to watch the children and work simultaneously, justified an award of custody to the mother who worked more flexible hours and was more often available after school and on weekends).

Although Idaho appellate courts have not directly addressed whether a parent's work schedule and need for outside child care is an appropriate factor for consideration in child custody determinations, our courts have identified some factors that are impermissible for custody determinations. These include a parent's past behavior that has not been shown to have a factual nexus with present behavior or with the welfare of the child. *Roeh,* 113 Idaho at 559, 746 P.2d at 1018. And in *McGriff,* 140 Idaho at 648, 99 P.3d at 117, our Supreme Court held that a parent's sexual orientation may not be a factor in determining child custody unless it is shown to cause harm to the child such that the child's best interests would not be served by giving custody to that parent.

■ The foregoing Idaho decisions, and many others, establish the overarching principle that the touchstone of every child custody analysis is the best interests of the children, which requires an inquiry into all the relevant circumstances that will affect those interests. We therefore now hold that consideration of a parent's work schedule and need for third-party child care is appropriate in a child custody determination to the extent that these circumstances are shown to affect the well-being of the children. This factor may be irrelevant to the custody decision in many cases, but it cannot be said that it will be irrelevant in all custody disputes. This is not to say that a working parent or a parent with a non-traditional work schedule is a presumptively inferior choice. We merely hold that a parent's work schedule may be one factor among many that can assist a magistrate court in tailoring a custody order that will best promote the welfare of the children.

In the present case, the magistrate did not err in considering the parents' employment schedules. Because Rudy worked a night shift, the children had to spend nearly half of their nights away from home. On dates when he worked, he was not available to be with the children when they awoke in the morning, during evenings, or when they wakened in the night. Even when he was available during the day, his fatigue interfered with his ability to care for the children, who entertained themselves while he slept. Accordingly, the parties' work schedules and need for third-party child care were relevant to the court's inquiry.

■ Rudy next argues that even if his employment schedule was a permissible matter for the magistrate court's consideration, the court placed undue weight on the work schedule and need for daycare.

■ An abuse of discretion in determining child custody may occur where the court overemphasizes one factor, and thereby fails to support its conclusion that the interests of a child will be best served by a particular custody award. *Moye,* 102 Idaho at 172, 627 P.2d at 801. In *Moye,* the Supreme Court held that the trial court had overemphasized the mother's medical condition. In that case, the trial court made ten findings of fact, six of which dealt with the mother's physical health. The seventh finding was that both parties loved the children, and three other findings concerned the status of the father. Based on this, the Supreme Court held that the trial court had overemphasized the mother's health problems and had not duly considered other relevant factors bearing upon the best interests of the children. Conversely, the Supreme Court found no abuse of discre-

tion in *Brownson v. Allen,* 134 Idaho 60, 995 P.2d 830 (2000), where the mother argued that the trial court gave undue weight to the child's wishes. The Supreme Court disagreed, noting that although the trial court made an inquiry into the child's wishes, it also considered other factors including the child's adjustment to home, school, and community, the continuity and stability of the child, and the physical and mental health of all individuals involved.

In the present case, the trial court considered and weighed many of the factors relating to custody outlined in I.C. § 32–717. The court found several facts that weighed in Rudy's favor: his role as the children's primary caregiver after the divorce; the children's preference to live with him; the fact that he lived in the marital home, enabling the children to attend their original schools when in his custody; his good character, including his civility and control in dealing with outbursts from Nancy; his general habit of consulting with Nancy regarding the children; and his positive influence on his children's manners and demeanor. However, the trial court noted several factors that went against Rudy, including the high number of days the children had missed school while in his custody, the untidy nature of his home, inadequate heating at the home, and his work schedule.

Regarding Nancy, the trial court also found several factors in her favor: the help she had received from her new husband; her spacious and neat home; the positive influence she had on her children; and, significantly, the changed work schedule that would allow her to care for the children more often. Nancy also had several factors weighing against her because she was less closely bonded to the children, had upset them in the past by canceling visits, and had exhibited manipulative behavior such as unilaterally withdrawing the children from their school and misrepresenting to school personnel her authority to do so.

Given this wide ranging inquiry, we cannot say that trial court overemphasized the issue regarding the work schedules. The error in *Moye* was not that the trial court improperly determined that one factor was entitled to greater weight or importance above others

that it had considered, but rather that the court had barely considered other relevant factors at all. Although the trial court in this case gave the work schedule factor great weight, the court also considered other relevant factors, and Rudy has not shown that the trial court abused its discretion in weighing the evidence that bore upon the custody issue.

**B. Legal Custody Over Educational Decisions**

 Rudy also argues that the magistrate erred in awarding Nancy sole legal custody to determine where the children will be enrolled in school. Legal custody refers to the decision-making rights, responsibilities, and authority relating to the health, education, and general welfare of the children. I.C. § 32–717B(3). In Idaho, absent sufficient evidence to the contrary, the presumption is that joint custody-whether physical or legal-is in the best interests of the child. If a court determines to award either physical or legal custody solely to one parent, it is required to state the reasons for its decision against joint custody. I.C. § 32–717B; *Roeh,* 113 Idaho at 562, 746 P.2d at 1021.

The magistrate court here determined that although the evidence did not otherwise rebut the presumption in favor of joint legal custody, the parties' past disputes concerning school enrollment made it necessary to confer upon the parent providing primary care the sole authority to choose the children's schools. Rudy contends that the evidence is insufficient to support this conclusion. We disagree. The evidence shows that Nancy and Rudy had proven incapable of making joint decisions about school enrollment, and each had changed the children's school enrollment without consulting the other. The magistrate's decision, which limited Nancy's unilateral authority solely to choosing the children's schools and continued joint legal custody with respect to all other questions concerning the children's education, health and general welfare, was not an abuse of discretion.

**C. Attorney Fees on Appeal**

 On the intermediate appeal to the district court, the district judge awarded

**908**

attorney fees to Nancy pursuant to I.C. § 12–121 on the ground that Rudy's appeal was frivolous. Rudy asserts that he presented arguable issues of law to the district court and therefore his appeal was not brought frivolously. An award of attorney fees may be granted by the district court when acting in its appellate capacity under I.C. § 12–121 and I.A.R. 41. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct.App.1995). Such an award is permissible only if the court is left with the abiding belief that the appeal was brought or defended frivolously, unreasonably and without foundation. *Id.* An award under I.C. § 12–121 may not be made where the appeal presents a genuine issue of law for review. *Stephens v. Stephens*, 138 Idaho 195, 198–99, 61 P.3d 63, 66–67 (Ct.App.2002); *Gillingham v. Swan Falls Land & Cattle Co.*, 106 Idaho 859, 863, 683 P.2d 895, 899 (Ct.App.1984).

We conclude that the district court erroneously characterized Rudy's appeal as frivolous. In view of the decisions of other jurisdictions, discussed above, holding that questions of work schedules and daycare should not be determinative of child custody, and given that our appellate courts have never directly addressed the question, Rudy's appeal was not frivolous. Although he has not prevailed in his challenge to the magistrate's decision, his appeal has raised a substantive legal issue, and we therefore reverse the district court's award of attorney fees. For the same reason, we do not grant Nancy's request, under § 12–121 or Idaho Rule of Civil Procedure 11(a)(1), for fees incurred in responding to Rudy's appeal to this Court.

The magistrate court order modifying the child custody provisions of the divorce decree is affirmed. The district court order awarding attorney fees on the intermediate appeal is reversed. Because each party prevailed in part, we do not award costs.

Chief Judge PERRY and Judge GUTIERREZ concur.