**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40888**

| | | |
|---|---|---|
| DANIEL DOUGLAS MAHNAMI, | ) | |
| | ) | **2014 Opinion No. 41** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: May 13, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| TIFFANY ANN MAHNAMI, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge; Hon. Steven A. Gardner, Magistrate.

Order of the district court affirming magistrate's judgment, vacated, and case remanded.

Thompson, Smith, Woolf & Anderson, PLLC; Aaron J. Woolf, Idaho Falls, for appellant.

Smith & Banks, PLLC; Jeffery W. Banks, Idaho Falls, for respondent.

_____

PERRY, Judge Pro Tem

Daniel Douglas Mahnami (Father) and Tiffany Ann Mahnami (Mother) are the parents of Ashley Mahnami (Daughter), who was born in 2004. In the magistrate court, Father asked the judge to resolve four disputes where Mother and Father had reached a stalemate. The magistrate resolved the disputes by granting Mother the unilateral and sole authority to make final decisions regarding Daughter's "health, education, and general welfare." Father appealed to the district court and argued that the magistrate's decision exceeded its authority and amounted to an improper grant of sole legal custody to Mother. The district court affirmed. Father appealed.

**I.**

**BACKGROUND**

Father and Mother divorced in 2009. The parties stipulated to joint legal custody and joint physical custody wherein Mother received primary physical custody of Daughter subject to

1

specified periods of visitation by Father. This stipulation was incorporated into their divorce decree.

The parties were unable or unwilling to resolve several disputes informally. As a result, Father filed several motions, addressing four specific issues: Daughter's participation in soccer, Daughter's eye doctor appointments, counseling for Daughter, and the conveyance of insurance forms. As to the soccer issue, Father complained that Mother was punitively prohibiting Daughter from playing soccer. Mother responded that Daughter did not enjoy soccer, that Father signed Daughter up for soccer to harass Mother, and that Father was manipulating the soccer schedule to interfere with Mother's access to her child. As to the doctor appointments, Father claimed that Daughter's school work was suffering, perhaps because of her eyesight. He also claimed that Mother was unwilling to schedule the necessary appointments. Mother replied that the child's eye doctor had told her that no additional eye exams were required, although visual therapy would be continued and she was able and willing to continue that therapy. As to the counseling issue, Father argued that counseling was appropriate because Daughter "had been upset lately, and not herself" and the "turmoil" between Father and Mother was causing Daughter to be distressed. Mother disagreed that Daughter needed counseling, and cited an expert opinion from the divorce litigation that supported her view. As to insurance forms, Father complained he was not receiving explanation of benefits forms within the time set forth in the divorce decree. Mother claimed that Father purposefully filed this motion while she was out of town and she attached all of the insurance forms to her affidavit.

The magistrate held a hearing to resolve each of these issues at which no evidence was presented by either party. At the beginning of the hearing, the court noted that it was being asked to "micromanage the activities of the parties" and asked if either party had filed a petition to modify the custody arrangement. Both parties indicated there was no such petition. Father's counsel explained that these four issues did not require a petition to modify custody because they were inherent to joint legal custody. He argued that joint custody creates shared decision-making authority wherein neither party has a "trump card" and the court must adjudicate disputes. Mother also presented arguments to the court expressly relying upon the lack of petition to modify custody.

The magistrate issued a written ruling. It acknowledged that neither party filed a petition to modify custody, nor requested any change in custody. The magistrate then explained its view of Idaho Code § 32-717B(3):

> On its face, the statute itself creates a stalemate, meaning that no decision or action regarding the health, education, and general welfare of the child can be made without both parties agreeing. A literal reading of the statute would be that if the parties do not agree, neither party can act on behalf of the child or have the child do or participate in anything, without the agreement of both parties.

The magistrate then went on to hold that the stalemate in this case was not in the best interest of the child. The magistrate considered appointing a parenting coordinator or ordering the parents to go to mediation in order to resolve the stalemate, but held that neither option was likely to remedy the ongoing disputes and, therefore, would not be in the best interest of the child. It then expressly considered the standards governing initial custody determinations and modifications of custody arrangements, I.C. § 32-717. Finally, the magistrate court ruled that:

> in order to break any stalemate or if the parties disagree on any matters regarding [Daughter], the court finds that [Mother] should be able to make the final decision for [Daughter's] *health, education and general welfare*, after consultation with [Father].

(emphasis added). The court conceded that "[Father] may argue that this decision frustrates and flies in the face of the notion of joint legal custody" but stated that it would define "joint legal custody" in this way because doing so was in Daughter's best interest.

Father appealed to the district court. The district court affirmed the magistrate's judgment concluding that the magistrate court was permitted to make a change to the custody arrangement even though no party submitted a petition asking it to do so, and the magistrate court did not abuse its discretion when it redefined joint custody.

On appeal to this Court, Father argues that the magistrate court exceeded its authority when it modified the custody arrangement without any party requesting that it do so. He also argues that the magistrate court erred by defining joint custody in that manner.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

3

The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). Thus, the appellate courts do not review the decision of the magistrate court. *Bailey*, 153 Idaho at 529, 284 P.3d at 973. Rather, we are procedurally bound to affirm or reverse the decisions of the district court. *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A. The Magistrate Was Not Empowered to Change the Custody Arrangement Without a Petition to Modify Custody

The district court ruled that Father failed to show error because no petition to modify custody is required if the parties raised "joint custody issues." Father disagrees. He argues that a court's power to decide cases is limited to matters raised in pleadings or to issues tried by implied or express consent. He argues that the magistrate decided an issue not properly before the court. More specifically, he argues that neither party sought a change in the custody arrangement in its pleadings and that the issue was not tried by consent.

We conclude that Father did not request a custody modification in his pleadings. The record shows that his motions relied upon the prior decree ordering joint custody and sought a remedy consistent with that order. Furthermore, Seventh Judicial District Local Rule C(3) sets forth a specific pleading procedure governing modifications to a custody order:

To modify an existing order of child support or of child custody (including visitation) *the party seeking modification shall file a petition specifically setting forth the change in circumstances relied upon and the modification sought.*

(emphasis added). The local rule is consistent with appellate authority holding that a "party petitioning for the modification bears the burden of proving that a substantial and permanent change has occurred." *Evans v. Sayler*, 151 Idaho 223, 226, 254 P.3d 1219, 1222 (2011). Neither party filed a petition consistent with this rule and authority. Indeed, when the magistrate court explicitly asked the parties if they had filed such a petition, they indicated they had not.

However, the court's authority may extend beyond those claims raised in a pleading. Idaho Rule of Civil Procedure 15(b) states that "When issues not raised by the pleading are tried

4

by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In *Nguyen v. Bui*, 146 Idaho 187, 191, 191 P.3d 1107, 1111 (Ct. App. 2008), this Court set forth the standard by which we determine if an issue was tried by consent:

> The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements. Nevertheless, *due process requires that parties have sufficient notice of the issues to be tried and an opportunity to address those issues with evidence and argument.* As the Idaho Supreme Court has said, "When issues are not raised by the pleadings, the evidence raising the legal issue must be clear enough so that both parties know of the issue and consent to the issue being tried." Trial of a claim or defense by consent is not established merely because evidence relevant to that issue was introduced; rather, *it must appear both parties understood that the evidence was aimed at the unpleaded issue.*

(internal citations omitted) (emphasis added).

On appeal, Mother cites the standard set forth above, but argues that Father consented to a determination of custody because he raised arguments concerning the application of an order awarding joint custody. In essence, she argues that the rules governing trial by consent are applied differently in the child custody context. We conclude that there is no basis to deviate from these general rules. For example, in *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003), the parties did not request a change in custody. Their disagreement focused on child support and whether the mother would be permitted to move. The magistrate court ruled that mother could not relocate and maintain custody; if she moved, then physical custody would transfer to the children's father. The Supreme Court held this was not an abuse of discretion, in part, because the magistrate's decision was not primarily a decision about custody, rather, custody was reached as a secondary matter and "only if [the mother] chose to move to Boise." *Id.* at 404, 64 P.3d at 330.

In *McGriff v. McGriff*, 140 Idaho 642, 646, 99 P.3d 111, 115 (2004), the mother filed a petition to modify the custody arrangement. Thereafter, the father filed his own petition. The parties agreed to attend counseling, and both petitions were dismissed. After counseling proved untenable, the court reinstated both petitions and granted custody to one parent. The Idaho Supreme Court held that courts retain subject matter jurisdiction over custody issues until the children reach the age of majority. It went on to hold that the procedure followed, a decision on custody matters after the petitions were reinstated, was proper.

5

Neither case, nor the authorities submitted by the parties, convince us that a trial court may deviate from the general rules limiting the authority of courts to consider cases. Accordingly, we apply the standard set forth in *Nguyen*, 146 Idaho at 191, 191 P.3d at 1111. Therefore, we must determine whether the parties had "sufficient notice of the issues to be tried," "an opportunity to address those issues with evidence and argument," and whether "both parties understood that the evidence was aimed at the unpleaded issue." *Id.*

The record shows that neither party was on notice that custody, as a general matter, was being disputed. The magistrate court never intimated to the parties that it considered legal custody to be at issue. It asked whether there was a petition to modify custody and when the parties indicated that there was no such petition, the court did not inquire further. Likewise, at the hearing, the court generally described the issue at hand as "micromanaging," reflecting its belief that the issue before the court was narrow (and perhaps petty). Neither party would infer from the court's conduct that legal custody of Daughter was being decided. Mother's attorney explicitly stated "there is not a Petition to Modify that is pending in front of this Court." The attorneys argued that such a modification would have to be supported by a "substantial and material change of circumstances," and that no such change existed. Father asserted that he was "not asking for a change in physical custody" and then requested that Mother be "held to the standard of joint legal custody."

Nor did the parties have any opportunity to present the evidence and argument appropriate to a custody modification dispute. As stated above, a party seeking a modification "bears burden of proving that a substantial and permanent change has occurred." *Evans*, 151 Idaho at 226, 254 P.3d at 1222. Here, the court held a motion hearing and permitted only oral argument. Neither party presented any evidence, neither called an expert witness, and neither presented much argument beyond the scope of the four issues in Father's motions. According to the record, both parties had fully litigated custody in a prior modification proceeding lasting almost two years and culminating in an two-day trial at which both sides called experts and presented voluminous evidence. Since then, there has been no indication that either parent intended to give up custody; rather, their custody battle was intense even as to relatively mundane matters. Accordingly, we conclude that neither party believed that the issue of legal custody was being tried by the magistrate court. Had they known that one party might be awarded sole legal custody, the record shows that the parties would have fiercely litigated the

issue. Accordingly, we conclude that the court denied the parties the ability to present evidence required to make a custody determination.

Finally, we conclude that neither party argued or adduced evidence "aimed at the unpleaded issue." Although Father spoke about joint legal custody, both he and Mother made clear that these issues arose as a result of the joint custody order and requested relief consistent with that order. Both the parties' arguments were aimed at addressing the four limited issues before the court. "Where the proof taken at trial is relevant to the pleaded issues in the case it would be manifestly unjust for the court to decide the case on theories not considered by the parties which may be inferentially proven by the evidence." *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 350, 612 P.2d 1192, 1197 (1980). For all of these reasons, we conclude that the district court erred and that the magistrate was not empowered to modify the custody arrangement.[1]

**B.      The Magistrate Applied an Incorrect Legal Standard to Define Custody**

Mother's alternate argument on appeal, and the district court's alternative basis for affirmance, was that the magistrate had discretion to redefine joint custody as it had done. The district court reasoned that this case is analogous to *Silva v. Silva*, 142 Idaho 900, 136 P.3d 371 (Ct. App. 2006). In that case, the parents divorced and the original decree ordered that they share legal and physical custody of their children. The parents' relationship further deteriorated and the parties disputed where the children should be enrolled in school. The mother filed a petition to modify the custody arrangement, seeking primary physical custody. After a hearing, the magistrate court granted the mother primary custody and also addressed the education dispute by granting the mother "sole legal custody over decisions on school enrollment" but joint legal custody "over all other matters." *Id.* at 904, 136 P.3d at 375. The district court held that *Silva* stands for the proposition that one parent may unilaterally decide certain issues within the overarching framework of joint legal custody. We disagree.

---

[1]      Mother argues that Father invited a ruling that altered the custody arrangement and, therefore, he should be estopped from claiming that the decision rendered was not pleaded or tried by consent. Consistent with our decision that this issue was not tried by consent or raised in the pleadings, we conclude that Father's motions did not amount to an invitation to rule on general custody issues. Mother also argues that the decision amounted to a declaratory judgment. We disagree and will not address those arguments further.

Our decision in *Silva* distinguished sole legal custody and joint legal custody in a manner that is inconsistent with the magistrate's "redefinition" of joint legal custody here. In *Silva*, this Court described joint legal custody generally as shared "decision-making rights, responsibilities, and authority relating to the health education, and general welfare of the children." *Id.* at 907, 136 P.3d at 378; *see also Danti v. Danti*, 146 Idaho 929, 942-43, 204 P.3d 1140, 1153-54 (2009) (holding an "award of joint legal custody" gives a parent "the right to share in decision-making"). This is consistent with the statutory definition of joint legal custody: "a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children." I.C. § 32-717B(3). Conversely, this Court described sole legal custody over education as "unilateral authority." *Silva*, 142 Idaho at 907, 136 P.3d at 378. Moreover, this Court described the magistrate's grant of exclusive authority over educational decisions to the mother as "sole legal custody" over that particular issue.

In this case, we conclude that the magistrate court's redefinition of "joint legal custody" was error in light of the statute and appellate authority. Although Mother was to consult Father before making certain decisions, the order granted her unilateral authority to make those decisions. Conversely, Father has no "decision-making rights." The decision in *Silva*, holding that a court may properly grant sole legal custody as to some issues and joint legal custody as to other issues, is inapposite. Under the plain language of I.C. § 32-717B(3) and the relevant Idaho appellate decisions, including *Silva*, the custody arrangement described by the magistrate here amounted to an award of sole legal custody to Mother in all respects and was error. Moreover, by improperly describing its order as a "redefinition" of joint legal custody, the magistrate failed to apply the correct legal standard applicable to awarding sole legal custody. A court cannot award one party sole legal custody absent evidence to rebut the presumption in favor of joint custody and "stat[ing] in its decision the reasons for denial of an award of joint custody." I.C. § 32-717B(1). Therefore, we conclude that the magistrate was neither empowered to modify custody directly, nor empowered to modify custody indirectly by awarding sole custody, but describing it as a redefinition of joint custody.

## C.    Costs and Fees

Mother requested costs and fees, but because she is not the prevailing party, she is not entitled to either. *Bolger v. Lance*, 137 Idaho 792, 798, 53 P.3d 1211, 1217 (2002).

Father requests an award of costs and fees pursuant to I.C. § 12-121. An award of attorney fees may be granted under Idaho Code § 12-121 and I.A.R. 41 to the prevailing party and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). Mother's arguments, while not persuasive, were not frivolous. Therefore, we conclude that Father is not entitled to attorney fees.

## III.

## CONCLUSION

The magistrate erred by modifying the custody agreement when neither party requested such a ruling in a pleading and the issue was not tried by consent. The magistrate also erred by awarding sole legal custody to Mother, but describing its order as a redefinition of joint custody. Therefore, the order of the district court affirming the magistrate court's judgment is vacated. We remand for further proceedings consistent with this decision. We award costs, but not attorney fees, to Father.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**