# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46977

STEPHANIE GUNN,

    Plaintiff-Respondent,

v.

JARED DANIEL GUNN,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: June 26, 2020

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bear Lake County. Hon. Mitchell W. Brown, District Judge. Hon. R. Todd Garbett, Magistrate.

Order of the district court, on intermediate appeal from the magistrate court, affirming judgment modifying child custody and support, <u>affirmed</u>.

May, Rammell & Well, Chtd.; Bron Rammell, Pocatello, for appellant. Bron Rammell argued.

LTM Law Group; Quentin W. Lackey, Caldwell, for respondent. Quentin W. Lackey argued.

_____

LORELLO, Judge

Jared Daniel Gunn appeals from an order of the district court, on intermediate appeal from the magistrate court, affirming a judgment modifying child custody and support. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jared and Stephanie Gunn were divorced in 2010. Pursuant to a stipulated supplemental divorce decree, the magistrate court awarded Jared and Stephanie joint legal custody of their three minor children, with Stephanie receiving 65 percent of the custodial time and Jared 35 percent. The magistrate court also ordered Jared to pay child support to Stephanie.

1

In 2016, Stephanie moved to modify the supplemental divorce decree, seeking among other things a reduction in Jared's custodial time with the minor children[1] and an increase in child support. Stephanie's motion asserted that a substantial change in circumstances had occurred since entry of the supplemental divorce decree because Jared had never exercised his entire allotted custodial time and his income had increased. After a trial, the magistrate court found that it was in the children's best interests to reduce Jared's custodial time from 35 percent to 20 percent and to increase his child support obligation from $853 a month to $1200 a month.

Jared appealed to the district court, challenging the reduction of his custodial time and the inclusion of some of his overtime income in his gross income for purposes of calculating child support.[2] The district court affirmed the magistrate court's judgment modifying child custody and support. Jared again appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate court's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, the appellate courts do

---

[1]    Prior to the filing of Stephanie's motion to modify, the parties' eldest child had reached the age of majority.

[2]    Jared also challenged the exclusion of some of Stephanie's income from her gross income for the purposes of applying the Idaho Child Support Guidelines, the lack of a decision on his claim to be reimbursed $2500 he allegedly loaned to Stephanie, and an award of $1000 to Stephanie for attorney fees she incurred due to Jared's failure to comply with discovery. Jared's appellate briefing contains no argument related to the exclusion of Stephanie's income or the $1000. Thus, Jared has waived these issues on appeal. Although Jared's initial brief contains a single passing mention of his claim for $2500, there is no substantive argument or citation to authority related to that issue. Consequently, Jared has waived this issue. *See Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

2

not review the decision of the magistrate court. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id.*[3]

## III.

## ANALYSIS

Jared articulates two issues on appeal: (1) whether custody and visitation can "be modified without consideration of the 'best interests' of the children, including any factors in Idaho Code [Section] 32-717(1)"; and (2) whether a court is required to "examine, address, and apply each of the standards expressly set forth in Rule 126(F)(1)(a)(ii) of the Idaho Rules of Family Law Procedure" when considering a parent's income earned in excess of forty hours per week. As to these issues, Jared first argues that the "[l]ower [c]ourts incorrectly concluded that the 'best interests of the child' standard, codified in [I.C.] § 32-717(1) did not apply to the modification of child custody and visitation in this case." Second, Jared argues that the "lower courts could not properly find that [his] work in excess of 40 hours was involuntary and did not meet the five conditions" of I.R.F.L.P. 126(F)(1)(a)(ii). Stephanie argues that the magistrate court properly evaluated the relevant factors when considering whether to reduce Jared's custodial time and correctly calculated Jared's gross income when modifying his child support obligation. We hold that Jared has failed to show error on either issue.

### A. Custodial Time

With respect to Jared's custody, the magistrate court made the following factual findings: (1) pursuant to a settlement agreement when the parties divorced, Stephanie had 65 percent of the custodial time and Jared had 35 percent of the time; (2) since the entry of the divorce decree, Jared has not exercised the 35 percent custodial time he was awarded, but has instead only exercised approximately 20 percent of his custodial time; and (3) the reduced amount of custodial time Jared has exercised is the result of him living in a different county than his

---

[3] In their briefing, both parties misstate the applicable standard of review. Because this is an appeal from the intermediate appellate decision of the district court, the standard as set forth above requires this Court to review the decision of the district court. We decline to review the magistrate court's decision when the parties ask us to review those decisions for purposes of challenging a decision.

children, his work schedule, and the children's schedule. Based on these factual findings, the magistrate court concluded that it is in the "children's best interests to have the custody and visitation schedule modified to reflect the actual amount of time [Jared] can spend with them, which is twenty percent (20%)." The magistrate court also concluded that it is in the "children's best interests for their parents to work together to facilitate custodial time with [Jared] which coincides with his time off work."

On intermediate appeal, Jared argued, as he does now, that the magistrate court abused its discretion by not addressing each factor enumerated in I.C. § 32-717(1) when considering whether a reduction in his custodial time would serve the best interests of the children. In addressing this issue, the district court concluded that "if I.C. § 32-717(1) has any bearing on this proceeding, it is marginal," because the issue being litigated was modification of physical custody based on what was actually occurring as opposed to establishing custody in the first instance. The district court reasoned that, because the magistrate court's "focus" was on the "historical amount of time" Jared spent with the children, "the factors associated with his exercise [of custody], or lack thereof, were the most germane and relevant issues at play" such that there was "not a lot of point or need in considering the seven (7) factors outlined in I.C. § 32-717(1)." The district court did not err in its analysis.

In determining custody, whether in the initial divorce decree or a subsequent modification, the welfare and best interests of the children are of paramount importance. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (Ct. App. 2006). Idaho Code Section 32-717(1) applies to custody decisions, including modification decisions, and contains a nonexhaustive list of factors that may be relevant to the determination of best interests and provides:

> In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and

4

(g)      Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

Although all relevant factors impacting a custody decision must be considered and reflected in the record, *see Schultz v. Schultz*, 145 Idaho 859, 863, 187 P.3d 1234, 1238 (2008), the same factors may not be relevant in every case. *Bartosz v. Jones*, 146 Idaho 449, 456, 197 P.3d 310, 317 (2008).  Magistrate courts are free to consider factors unique to each case. *See id.* The evidence adduced at trial showed that Jared lives in a single-bedroom apartment about an hour's drive from where the children reside and their activities take place.  Jared's lack of overnight accommodations for the children, the distance he lives from his employment, and his work schedule are obstacles that exacerbate Jared's ability to exercise his custodial time.  The evidence showed that Jared lives a thirty-minute drive from his workplace and that he has an inflexible work schedule comprised of twelve-hour shifts in rotating three-day and four-day workweeks, alternating between day and night shifts.  Stephanie also testified that Jared often failed to exercise his custodial time due to his work schedule.  Text messages submitted by Stephanie corroborate her testimony.[4]  Our decision in *Silva* supports the conclusion that the custody schedule should account for a parent's work schedule as it relates to the parent's ability to care for the children.

In *Silva*, this Court reviewed a custody modification centered on the parents' work schedules.  *Silva*, 142 Idaho at 904-06, 136 P.3d at 375-77.  In particular, the Court noted the magistrate court's finding that the father worked a night shift, which required the children being cared for by others while in father's custody and which limited father's ability to care for the children when he was off work and home during the day due to his need to sleep during that time.  We held that a parent's work schedule may be one factor among many that can assist a magistrate court in tailoring a custody order that will best promote the welfare of the children. *Id.* at 906, 136 P.3d at 377.

---

[4]      In one such conversation between Jared and Stephanie, Jared asserted that his lack of parenting time was "not [his] choice," implying that his work schedule prevented him from exercising parenting time.  In another, Jared asserted that he could not take the children because he had to work.

A trial court should avoid assigning too much weight to any particular factor. *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981). However, Jared's work schedule was central to the dispute and request for modification in this case because it limited the custodial time he could exercise. None of the factors set forth in I.C. § 32-717(1) indicate that a custodial parent should receive additional custodial time when the parent cannot *actually exercise* that custodial time in some way.[5] Because Jared received the maximum custodial time he can exercise, the district court did not err in affirming the magistrate court's decision not to address each factor enumerated under I.C. § 32-717(1). Rather, as the district court concluded, the magistrate court's finding that Jared only exercised 20 percent of the custodial time was supported by substantial evidence in the record and that finding supports the legal conclusion that it is in the best interests of the children that the custody order reflect that reality.

**B.    Child Support**

Jared argues that a modification of his child support obligation was inappropriate under "each condition or standard in I.R.F.L.P. 126(F)(1)(a)(ii)." More specifically, Jared argues that the "lower courts did not identify or analyze" any of the relevant factors from I.R.F.L.P. 126(F)(1)(a)(ii), but instead applied a legally erroneous "'reliable and expected' standard."[6] Jared's complaint in this regard centers on whether his work in excess of forty hours per week was involuntary such that the magistrate court could consider his wages related to those hours in the child support calculation.

Idaho Rule of Family Law Procedure 126(F)(1)(a)(ii) provides, in pertinent part:

> Compensation received by a party for employment in excess of a 40 hour week shall be excluded from gross income, *provided the party demonstrates* and the Court finds: (1) the excess employment is voluntary and not a condition of

---

[5]    A contrary conclusion could lead to custody decisions in which noncustodial parents enjoy a reduction in their child support obligations for custodial time they cannot exercise. *See* I.R.F.L.P. 126(J)(5) (requiring consideration of the amount of time a child spends with each parent when calculating child support). During such unexercised custodial time, the custodial parent would incur support expenses for a child that the noncustodial parent should bear. Such a situation is unfair to the custodial parent and does not serve a child's best interests where, as here, the custodial parent's income is less than that of the noncustodial parent.

[6]    According to Jared, the magistrate court improperly included overtime income in his gross income because the overtime was "reliable and expected."

employment; and (2) the excess employment is in the nature of additional, part-time employment, or is employment compensable as overtime pay by the hour or fractions of the hour, and (3) the party's compensation structure has not been changed for the purpose of affecting a support or maintenance obligation, and (4) the party is otherwise paid for full time employment at least 48 weeks per year, and (5) child support payments are calculated based upon current income.

(Emphasis added.) This rule "is intended to benefit those who already work a full-time job, and undertake voluntary, additional employment." *Id.* The rule does benefit "those whose employer regularly requires overtime as part of their employment." *Id.*

The magistrate court concluded that Jared's child support obligation should be increased from $853 a month to $1200 a month based on overtime Jared worked that the magistrate court found is required as part of Jared's employment. For purposes of applying the child support guidelines, the magistrate court found that Jared's "gross income" in 2016 rounded to the nearest dollar was $96,474 and that he was likely to earn approximately the same amount in the next year. The magistrate court calculated Jared's gross income by taking his actual income in 2016, which it found to be $107,193, and reducing that amount by 10 percent to account for voluntary overtime.[7] When considering whether to exclude any of Jared's overtime income from his gross income, the magistrate court found that Jared's overtime fell into one of four categories: (1) "shift overtime," which occurred regularly and was built into Jared's ordinary work schedule; (2) "shutdown overtime," which occurred only when equipment was shut down due to damage or scheduled maintenance; (3) "draft overtime," which occurred when an employee with a specific skill set was required for a shift; and (4) other volunteer overtime. The magistrate court found that Jared's shift, shutdown, and draft overtime were mandatory and that--with the exception of attempting to argue that shutdown overtime was voluntary--Jared failed to present evidence of

---

[7]     The magistrate court's written decision modifying child support does not contain an express finding of Jared's actual 2016 income. Rather, the magistrate court found only that Jared's actual 2016 income should be reduced by 10 percent to account for voluntary overtime and that this reduction resulted in a gross income of $96,474.13. Reversing the 10 percent reduction and rounding to the nearest dollar results in an actual 2016 income for Jared of $107,193. Jared does not dispute the accuracy of the magistrate court's calculations.

any specific amount of volunteer overtime. Consequently, the magistrate court concluded that 90 percent of Jared's overtime income was part of his gross income.[8]

The district court on intermediate appeal affirmed the magistrate court's child support modification decision, concluding it was supported by substantial and competent evidence. During trial, an employee in the human resources department of Jared's employer and Jared's direct supervisor both testified to Jared's work schedule and overtime. The human resources employee testified that, in every two-week pay period, Jared was scheduled to work forty-eight hours one week and thirty-six hours the other, which resulted in eight hours of scheduled overtime every pay period that Jared was expected to work.[9] In addition to the scheduled overtime, the human resources employee and Jared's supervisor both testified about two other ways Jared could receive overtime. One type of overtime arose whenever machinery was taken offline due to damage or scheduled maintenance.[10] The human resources employee testified that, although shutdowns did not occur according to a regularly set schedule, employees were expected to work overtime arising from a shutdown unless they were unavailable when the overtime was announced--for example, by being out of town and unable to return before the overtime shift by having scheduled vacation before the announcement of the overtime shift. Jared's supervisor testified that, if an employee is available, he or she is expected to work overtime arising from a shutdown. Finally, both the human resources employee and Jared's supervisor testified that Jared could be "drafted" into working overtime if his skill set was needed to cover a shift and no other employee with the necessary skills filled the shift voluntarily.[11] According to the human resource employee, once an employee is notified he or

---

[8]    Although the basis for excluding 10 percent of Jared's overtime income from his gross income is unclear, any error underlying the exclusion is favorable to Jared and, therefore, not error as to him. Consequently, we need not address any error underlying the 10 percent exclusion. *See Bischoff v. Steele*, 75 Idaho 485, 490, 274 P.2d 986, 988 (1954) (holding that party may not assert a favorable error in jury instructions on appeal).

[9]    The magistrate court referred to this overtime as shift overtime.

[10]    The magistrate court referred to this overtime as shutdown overtime.

[11]    The magistrate court referred to this overtime as draft overtime.

she has been drafted, the overtime shift is mandatory unless the employee is physically unable to work for some reason. Jared did not present, however, a specific amount of overtime he worked.

The record belies Jared's appellate arguments that the "lower courts did not identify or analyze any of the factors or standards" in I.R.F.L.P. 126(F)(1)(a)(ii) and erroneously included his overtime in his gross income because it was "reliable and expected." As described above, the magistrate court found that Jared's shift, shutdown, and draft overtime were *mandatory* and that, despite asserting that he worked other voluntary overtime, Jared failed to establish any specific amount of *volunteer* overtime. Stated differently, the magistrate court found that Jared failed to present evidence of any specific amount of overtime that satisfied the first prong of I.R.F.L.P. 126(F)(1)(a)(ii). This finding is sufficient to prevent the exclusion of *any* of Jared's overtime income from his gross income for purposes of applying the child support guidelines. *See Pelayo*, 154 Idaho at 864, 303 P.3d at 223. The remainder of Jared's arguments effectively asks this Court to reexamine and reweigh the evidence. We decline to do so.

## IV.

## CONCLUSION

Jared has failed to show error in the district court's intermediate appellate decision affirming the magistrate court's decision to reduce his custodial time and increase his monthly child support obligation. Consequently, the district court's order, on intermediate appeal from the magistrate court, affirming a judgment modifying child custody and support is affirmed. As the prevailing party, costs on appeal are awarded to Stephanie.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.

9