# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50719-2023

| | | |
|---|---|---|
| ISAAC WILLIAM HESS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Pocatello, June 2024 Term |
| | ) | |
| v. | ) | Opinion filed: October 28, 2024 |
| | ) | |
| LISA ANN HESS, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Michael J. Whyte, District Judge. Steven A. Gardner, Magistrate Judge.

The decision of the district court is <u>affirmed in part</u>, <u>reversed in part</u>, and <u>remanded</u>.

Murray, Ziel & Johnston, PLLC, Meridian, for Appellant. Kevin Shupperd argued.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, for Respondent. Tracy W. Gorman argued.

---

ZAHN, Justice.

This case concerns child custody proceedings between Isaac William Hess and Lisa Ann Hess. Isaac and Lisa have two minor children, who are registered members of the Cherokee Nation. During the proceedings, Isaac alleged that Lisa had abused the children by spanking them with a PVC pipe and that she was a negligent mother. Isaac's father was briefly granted emergency guardianship of the children in the District Court of the Cherokee Nation during the proceedings. The Idaho court stayed its proceedings pending the resolution of the guardianship action in the Cherokee Nation court. Shortly thereafter, the District Court of the Cherokee Nation dismissed the guardianship action because the children lived outside the jurisdictional borders of the Cherokee Nation. The Idaho court then held a trial on the custody issues, after which the magistrate court awarded Lisa sole physical custody of the children and awarded Isaac and Lisa joint legal custody but granted Lisa "the final say and determination as to how to proceed, at all times, on all such

issues, at her sole discretion, even over Isaac's objection." Finally, the magistrate court ordered Isaac to pay child support, which was calculated based on Lisa having sole physical custody. The court backdated the child support award to January 1, 2021. Isaac appealed the decision to the district court, which affirmed the magistrate court.

Isaac appeals from the district court's decision and argues that the district court erred in affirming the magistrate court because: (1) the magistrate court should have conferred with the courts of the Cherokee Nation regarding jurisdiction over custody and support of the minor children; (2) the magistrate court was required by Idaho Code section 32-717C to refer Isaac's child abuse allegations to the Idaho Department of Health and Welfare ("DHW") for an investigation; (3) the magistrate court impermissibly focused on only one of the Idaho Code section 32-717 factors in awarding Lisa sole physical custody; (4) the magistrate court effectively awarded Lisa sole legal custody without making the necessary prerequisite findings; and (5) the magistrate court should not have backdated the child support award to January 2021 because the children primarily resided with Isaac at the time the divorce petition was filed and for several months thereafter.

We affirm the district court's decision affirming the magistrate court's decisions on the jurisdictional issue, declining to refer Isaac's allegations of child abuse to DHW for investigation, and awarding Lisa sole physical custody. Isaac failed to establish that the Cherokee Nation was a "home state" of the children for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), his allegations did not rise to the level of child abuse as defined in Idaho law, and the magistrate court considered all relevant statutory factors prior to awarding Lisa sole physical custody.

However, we hold that the district court erred in affirming the magistrate court's decisions concerning legal custody and backdating its child support award to January 1, 2021. The magistrate court's legal custody decision is internally contradictory and requires clarification. Further, its decision to backdate the child support award to January 1, 2021, deviated from the Idaho Child Support Guidelines without explanation. We reverse the district court's decision on those two points and remand for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Isaac and Lisa were married in 2011. They have two minor children, one born in 2013 and the other in 2016. Isaac and the two children are registered members of the Cherokee Nation. In

2015, Isaac and Lisa moved to Idaho Falls, Idaho. From 2015 until December 2020, Isaac, Lisa, and the children lived with Isaac's father. From December 2020 through July 2021, Lisa lived with her sister in Rexburg, Idaho.

Isaac filed a pro se petition for divorce on December 24, 2020. In his petition, Isaac averred that he, Lisa, and the children had lived in Idaho for the previous five years. Isaac also asserted that the Idaho magistrate court had jurisdiction to determine the custody of the children under the UCCJEA because each child had resided in Idaho for at least six consecutive months prior to filing the petition. Isaac checked the box on his petition stating that there were no other cases impacting the children. Isaac requested joint legal and joint physical custody of the children, and that Lisa pay him $733 a month in child support beginning the month after the petition was filed.

After Isaac filed the petition, Isaac and Lisa agreed that the children would stay with Isaac during the school week and with Lisa on the weekends and most holidays. Lisa was also able to visit the children after school. Given this informal agreement, there initially was no court order concerning child visitation.

Lisa subsequently petitioned the magistrate court for entry of a temporary custody order for joint physical and legal custody and alleged that she was no longer welcome in Isaac's father's house, which impeded her visitation with the children. Isaac opposed Lisa's request and denied her allegations. Isaac also filed a declaration alleging that Lisa was a negligent mother and had abused the children by spanking them with a PVC pipe. Lisa filed a declaration in response, admitting that she had spanked her children with a PVC pipe, but only because it was a form of discipline used in Isaac's family. Lisa declared that the practice made her uncomfortable and that she once or twice left a small bruise on her children as a result of the practice. Lisa stated that she felt awful about causing the bruises and that she stopped using the PVC pipe in October 2020 and had never used it again.

On June 16, 2021, the magistrate court granted Lisa's motion and orally issued temporary orders awarding Isaac and Lisa joint legal and physical custody of the children. The magistrate court did not address Isaac's allegations of child abuse. The magistrate court ordered the parties to share custody of the children over the summer using a "week on, week off" visitation schedule. From June 16, 2021, until sometime in late August 2021, the record indicates that the parties alternated every one or two weeks with the children. In June 2021, Isaac moved to an apartment in Oklahoma and planned to move into the new household of his father, which was also located in

3

Oklahoma, if he had custody of the children. Isaac testified at trial that he did not tell Lisa that he had moved to Oklahoma but would pick the children up in Idaho and take them to Oklahoma during his custody periods.

On August 23, 2021, Lisa filed an emergency ex parte motion for an order directing Isaac to return the children to Lisa. Lisa filed a declaration in support of the motion, alleging that Isaac had not returned the children to her following his custody period. Lisa alleged that Isaac's father, James Hess, had taken the children to Oklahoma with Isaac's consent; that James had filed an emergency guardianship petition in the District Court of the Cherokee Nation alleging Lisa was unfit to be a mother and was physically abusing the children; and that Isaac refused to return the children to Lisa. Lisa's declaration included a "Letter of Emergency Guardianship" from the Cherokee Nation courts that appointed James Hess emergency guardian of the children.

The magistrate court denied Lisa's motion and postponed the custody trial. In its order postponing the trial, the magistrate court found that "it appear[ed] to the court that Isaac has participated in and consented to a deliberate ploy to try to circumvent the actions of this court in determining custody and visitation of the minor children as between him and Lisa, over which this court retains jurisdiction." Nonetheless, the magistrate court found that it would be inappropriate for it to move forward on the issue of custody while another jurisdiction was considering guardianship.

Lisa retained Oklahoma counsel to oppose the guardianship petition pending before the Cherokee Nation court. On September 3, 2021, the Cherokee Nation court dismissed James Hess's case, stating: "Case dismissed. Children live outside the jurisdictional borders of the Cherokee Nation." On September 9, 2021, Lisa filed another emergency ex parte motion with the Idaho magistrate court seeking an order for the return of the children and requesting sole legal and physical custody until trial. On September 13, 2021, the magistrate court granted Lisa's motion and issued an emergency order requiring the children to be returned to Idaho. The court additionally granted Lisa sole legal and physical custody of the children. Lisa brought the children back to Idaho and Isaac continued to reside in Oklahoma. Isaac thereafter dismissed his Idaho legal counsel and opted to represent himself in the Idaho proceedings.

The magistrate court held a court trial on the custody issues on February 25, 2022. Isaac testified that because he and the children were registered members of the Cherokee Nation, the Cherokee Nation had jurisdiction over the custody case, the Idaho magistrate court had no

4

jurisdiction, and Isaac would not be bound by orders of the Idaho magistrate court. Isaac also accused the Idaho magistrate judge of committing treason. Isaac testified that he had filed two petitions in the Cherokee Nation court to resolve the child custody issues. Isaac entered two petitions into evidence: a "Petition for Child Custody Determination, Visitation, Award of Child Support and Other Child Expenses, Award of Attorney's Fees and Temporary Custody," filed in the District Court of the Cherokee Nation, and a "Petition For Divorce," filed in the District Court of Cherokee County, State of Oklahoma. This was the first time the magistrate court was made aware of these filings.

Isaac also testified that Lisa's disciplinary actions amounted to child abuse and that Lisa was a negligent mother. Isaac argued that his allegations of child abuse required an investigation by the Idaho Department of Health and Welfare ("DHW"). Lisa testified that keeping the children with her would be in the best interests of the children, that she no longer used the PVC pipe to spank her children, and that she wanted Isaac's input on parenting decisions but wanted sole legal and sole physical custody because she was afraid that Isaac would take the children to Oklahoma again and refuse to return them.

After the trial concluded, the magistrate court issued its findings of fact, conclusions of law, and order. The order awarded Lisa sole physical custody but awarded the parties joint legal custody and stated that the parties should share the decision-making rights, responsibilities, and authority relating to the health, education, and general welfare of the minor children. However, the order also stated that, if the parties disagreed on an issue relating to the children, Lisa had the final say as to how to proceed. The order allowed Isaac visitation rights at Lisa's discretion. Finally, the magistrate court calculated child support based on Lisa's having sole physical custody and ordered Isaac to pay child support payments backdated to January 1, 2021.

Isaac then filed a motion to disqualify, alleging bias and misconduct by the magistrate judge and continuing to assert that only the Cherokee Nation had jurisdiction to determine custody issues. The magistrate court issued a written order withdrawing its written decision and order, denying the motion, and then reissuing its written decision and order.

Isaac appealed pro se to the district court, arguing that there were ambiguities in the magistrate court's order, that a DHW investigation of Lisa should have been ordered, and that the magistrate court lacked jurisdiction to make any decisions concerning child custody. Isaac also accused the magistrate court of bias and mental impairment. The district court held oral argument

on Isaac's appeal, after which it issued a written decision that found no error or bias by the magistrate court, affirmed the magistrate court in all respects, and awarded attorney fees against Isaac for his personal allegations against the magistrate judge. Isaac appealed to this Court and is once again represented by legal counsel.

Prior to oral argument before this Court, Lisa filed a motion asking us to take judicial notice of certain filings from a lawsuit that Isaac initiated in the U.S. District Court for the District of Columbia. We granted Lisa's motion to take judicial notice of the documents. The filings indicate that Isaac sued several parties, including the U.S. Department of the Interior and the Cherokee Nation, seeking a declaratory judgment that the District Court of the Cherokee Nation has exclusive jurisdiction over child custody disputes when the children are registered members of the Cherokee Nation. Both the U.S. Department of the Interior and the Cherokee Nation filed motions to dismiss. The U.S. District Court for the District of Columbia granted the motion to dismiss, concluding it lacked subject matter jurisdiction because declaratory relief would not have redressed Isaac's alleged harm.

After we granted Lisa's motion to take judicial notice, and prior to oral argument, Isaac filed a motion with this Court, asking us to take judicial notice of additional pleadings from Isaac's case in the U.S. District Court for the District of Columbia, and to also take judicial notice of filings in the custody case that Isaac initiated in the District Court of the Cherokee Nation. Isaac also asked that we take judicial notice of a decision by the U.S. District Court of South Dakota in an unrelated case involving unrelated parties. We granted Isaac's motion.

The filings indicate that on February 15, 2022, Isaac filed a "Petition for Child Custody Determination, Visitation, Award of Child Support and Other Child Expenses, Award of Attorney's Fees, and Temporary Custody" in the District Court of the Cherokee Nation. On June 2, 2022, the District Court of the Cherokee Nation entered an order dismissing the case for lack of jurisdiction because the children lived in Idaho and an Idaho court had already issued a decision in the case:

1. The permanent residence of the minor children at issue in this case was the State of Idaho at the time the Petition was filed herein and at the time this Order is being entered.

2. There is a lawful custody determination for the minor children in the District Court of Bonneville County, State of Idaho, in case no.: CV10-20-7925.

3. This [c]ourt lacks jurisdiction over this case because there is a child custody determination by a court of competent jurisdiction involving the same parties and subject matter.

4. The Respondent's Motion to Dismiss filed herein is **GRANTED**.

(Bold language in the original.) On May 5, 2023, Isaac filed a motion for reconsideration, alleging that the children legally resided within the Cherokee Nation fifty percent of the time for more than six months preceding his filing of the case. Lisa, who had again retained Oklahoma counsel to represent her interests in the Cherokee Nation court, opposed the motion for reconsideration, and argued that Isaac's contention that the children lived in Oklahoma fifty percent of the time for six months before the filing of the case was "blatantly false and can only be viewed as an intentional misrepresentation to [the court]." Lisa asserted that, during the timeframe in question, she had sole physical custody of the children in Idaho, that the children had never permanently resided within the boundaries of the Cherokee Nation, and that the last time the children had been within the borders of the Cherokee Nation was when Isaac took the children there in August 2021 in an attempt to bypass the jurisdiction of the Idaho magistrate court.

The filings indicate that a hearing on the motion for reconsideration was set for September 28, 2023. None of the filings address the outcome of that hearing. Isaac's memorandum in support of his motion for judicial notice suggests that the Cherokee Nation court took the motion for reconsideration under advisement and is awaiting a decision by this Court before ruling on the motion. However, there is nothing in the record to substantiate his assertion. At oral argument, Isaac's attorney asserted that the Cherokee Nation court held a "trial" on Isaac's child custody petition, which would seemingly contradict his assertion in his memorandum that the Cherokee Nation court had not yet issued a decision on his motion to reconsider its dismissal of his petition. But again, there is no evidence in the record indicating that a trial occurred or how the Cherokee Nation court resolved the motion for reconsideration.

## II. ISSUES ON APPEAL

1. Whether the district court erred when it affirmed the magistrate court's decision that it was not required to confer with the courts of the Cherokee Nation concerning child custody.

2. Whether the district court erred when it affirmed the magistrate court's decision to not refer Isaac's allegations of child abuse to DHW for investigation.

3. Whether the district court erred in affirming the magistrate court's decision awarding Lisa sole physical custody of the children.

4. Whether the district court erred in affirming the magistrate court's decision to award joint legal custody to Isaac and Lisa while also ordering that Lisa had final decision-making authority.

5. Whether the district court erred in affirming the magistrate court's decision to backdate its child support award to January 1, 2021.

6. Whether either party is entitled to an award of attorney fees on appeal.

## III. STANDARD OF REVIEW

"When an appeal is initially taken to the district court from a decision by a magistrate, any subsequent review will be conducted independent of, but with due regard for, the decision of the district court." *O'Holleran v. O'Holleran*, 171 Idaho 671, 673, 525 P.3d 709, 711 (2023) (quoting *Kelly v. Kelly*, 171 Idaho 27, 34, 518 P.3d 326, 333 (2022)). "This Court is procedurally bound to affirm or reverse the decisions of the district court." *Id*. (internal quotation marks and citation omitted). "When a district court decides an issue in its appellate capacity, this Court reviews the magistrate court's record 'to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings.'" *Id*. (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013)). "This Court affirms the district court's decision as a matter of procedure if 'those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision.'" *Id*. (alteration omitted) (quoting *Pelayo*, 154 Idaho at 858, 303 P.3d at 217).

## IV. ANALYSIS

**A. The district court did not err in affirming the magistrate court's determination that it was not required to confer with the Cherokee Nation court because no conference was required under the UCCJEA.**

The magistrate court concluded that it had jurisdiction to determine the custody of the children because Isaac alleged in his divorce petition that Idaho had jurisdiction of child custody matters and that the children resided in Idaho for at least six consecutive months before the petition was filed. The magistrate court acknowledged Isaac's custody petition filed in the District Court of the Cherokee Nation but concluded that there was no evidence that the Cherokee Nation court would accept jurisdiction and the magistrate court had not received any communication from the Cherokee Nation court that it intended to assert jurisdiction over the custody determination.

On intermediate appeal, Isaac argued that because the children are registered members of the Cherokee Nation, jurisdiction to determine the custody of the children only resides with the

8

tribal courts of the Cherokee Nation. The district court concluded that the magistrate court correctly determined that Idaho was the children's home state because Isaac alleged they resided in Idaho for at least six months prior to the filing of his petition. The district court also noted that the Cherokee Nation court had dismissed Isaac's father's guardianship petition and that it had taken no action on Isaac's custody petition for over a year, thus indicating that it had no interest in asserting jurisdiction over the child custody determination.

Preliminarily, Lisa contends that we should not consider Isaac's appeal on this issue because "subject matter jurisdiction was not properly challenged before the magistrate court." We reject this argument and conclude that Isaac's subject matter jurisdiction argument can be addressed on appeal. "This Court must address jurisdictional issues, even if they were neither raised before, nor addressed by, the trial court." *Blankenship v. Wash. Tr. Bank*, 153 Idaho 292, 295, 281 P.3d 1070, 1073 (2012). Isaac's argument implicates questions of concurrent jurisdiction. Jurisdictional arguments can be raised at any time, including on appeal, and therefore we will consider the argument. *See id.*

Turning to the merits of Isaac's argument, he contends that the magistrate court erred by failing to consult with the Cherokee Nation court concerning which court should exercise jurisdiction over the child custody issues. According to Isaac, there are two competing jurisdictions for purposes of child custody. He concedes that Idaho has jurisdiction because the children resided there for more than six months prior to Isaac's filing of the divorce petition. However, he argues that the Cherokee Nation court also has jurisdiction over child custody matters concerning tribal members under treaties with the United States, federal law, and title 20, chapter 2, section 24(3) of the Cherokee Code. Isaac contends that the UCCJEA, as adopted by Idaho, does not prohibit the courts of the Cherokee Nation from claiming and exercising jurisdiction over its members in child custody disputes and that the jurisdictional issue turns on whether Idaho or the Cherokee Nation have priority in jurisdiction.

Lisa responds that the magistrate court had subject matter jurisdiction pursuant to Idaho Code section 32-717, there is no federal law removing Idaho's jurisdiction, and the Cherokee Nation courts have repeatedly declined to exercise jurisdiction over the children's custody. Lisa contends that divorce proceedings involving child custody and tribal-state jurisdictional disputes are subject to the UCCJEA only if the state has enacted optional section 104(b) and (c) of the uniform act, which would require state courts to treat tribes as if they were states. Because Idaho

9

has not adopted section 104(b) and (c) of the uniform act, Lisa argues that Idaho is not required to treat the Cherokee Nation as a competing jurisdiction.

"Questions of subject matter jurisdiction are questions of law over which this Court exercises free review." *Swanson v. Swanson*, 169 Idaho 766, 769, 503 P.3d 982, 985 (2022). Subject matter jurisdiction over child custody disputes in Idaho is governed by Idaho's UCCJEA. I.C. §§ 32-11-101 to 32-11-405. Idaho Code section 32-11-201(a)(1) permits an Idaho court to exercise jurisdiction to make an initial child custody determination if Idaho is the home state of the children on the date the proceedings were commenced. "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." I.C. § 32-11-102(g). "Courts of a child's home state are given priority to make an initial child custody determination." *Swanson*, 169 Idaho at 771, 503 P.3d at 987 (first citing I.C. § 32-11-201(a)(1); and then citing Model UCCJEA § 201 cmt. 1 (Nat'l Conference of Comm'rs on Uniform State Laws 1997)).

Here, the Idaho magistrate court concluded that it had jurisdiction over the child custody determination largely because Isaac alleged in his divorce petition that the magistrate court had jurisdiction under the UCCJEA since the children had resided in Idaho for at least six consecutive months before the petition was filed. *See* I.C. § 32-11-201(a)(1). The magistrate court noted that it had not received any communication from the Cherokee Nation court indicating that it wished to assert jurisdiction. Nor does the record give any indication that the Cherokee Nation was a "home state" of the children for purposes of Idaho's UCCJEA.

The district court did not err in affirming the magistrate court's decision. The magistrate court was entitled to rely on Isaac's sworn statements in his divorce petition, which established that Idaho was the "home state" of the children and that it had jurisdiction to make an initial child custody determination. *See* I.C. §§ 32-11-102(g), 32-11-201(a)(1).

Isaac argues that the courts of the Cherokee Nation have jurisdiction over child custody matters concerning tribal members under treaties with the United States, federal law, and provisions of the Cherokee Code. Specifically, Isaac cites a section of the Cherokee Code providing that the Cherokee Nation generally has jurisdiction over "[a]ll cases involving the domestic relations of Indians including child custody and adoption matters." 20 Cherokee Nation Tribal Code § 24(3). Isaac argues that because the children are registered members of the Cherokee

Nation, the Cherokee Nation courts also have jurisdiction over the children and that Idaho's courts should be required to confer with the Cherokee Nation courts to determine jurisdiction. Isaac argues that the Cherokee Nation falls under the definition of "State" in the UCCJEA and that Idaho courts should be required to conduct a conference with the applicable tribal court to determine jurisdiction if there is dueling jurisdiction.

Assuming, as Isaac contends, that the Cherokee Nation is a state for purposes of the UCCJEA, Isaac's argument still fails because he has not established that there was a parallel proceeding in the Cherokee Nation courts that predated the Idaho proceeding that Isaac commenced. We recently addressed when an Idaho court is required to consult with a court of another jurisdiction to determine which court will maintain jurisdiction over a child custody matter:

> Idaho Code section 32-11-206 sets out a three-step framework for determining whether an Idaho court can exercise jurisdiction in a custody matter when there is a parallel custody proceeding in another state regarding the same child. *First*, the Idaho court must determine if the *parallel proceeding predates the Idaho proceeding. Second*, the Idaho court must determine if the state court handling the parallel proceeding *has jurisdiction in substantial compliance with Idaho's enactment of the UCCJEA. Finally, if the parallel proceeding commenced first in another state, and that state has jurisdiction in substantial conformity with the UCCJEA, the Idaho court must initiate a communication with the other state court* to discuss which forum is more appropriate. If Idaho is not the more appropriate forum, the Idaho court shall not exercise jurisdiction, even if Idaho would otherwise have jurisdiction under the UCCJEA.

*Swanson*, 169 Idaho at 770–71, 503 P.3d at 986–87 (emphasis added).

Under Idaho Code section 32-11-206(a), the Idaho magistrate court was only required to consult with the Cherokee Nation court if Isaac established that there was a parallel proceeding in the Cherokee Nation court that predated the Idaho proceeding. Isaac has not established this. Nor could he, because the record is clear that Isaac first filed a divorce and custody petition in Idaho on December 24, 2020, and then over eighteen months later, on February 15, 2022, he filed a custody petition in the District Court of the Cherokee Nation. Because there was no parallel proceeding that predated the Idaho action, the magistrate court had no obligation to confer with the Cherokee Nation courts under the UCCJEA.

Moreover, the record demonstrates that when the jurisdictional question has been put to the Cherokee Nation courts, they have repeatedly declined to exercise jurisdiction. Isaac has not submitted any evidence indicating that the Cherokee Nation was a home state of the children for

11

purposes of the UCCJEA. While he cites to treaties and the Cherokee Code, the Cherokee Nation court filings provided to this Court suggest that the Cherokee Nation courts dismissed the guardianship and custody proceedings because they determined that they lack jurisdiction. While Isaac has suggested that the Cherokee Nation court could later reconsider its decision and hold a trial on his petition, he has not provided this Court with copies of the Cherokee Nation court's order granting reconsideration, evidence that it held a trial on his petition, or evidence that it issued an order or judgment concerning his custody petition. In short, Isaac submitted no evidence indicating that the Cherokee Nation was the children's home state, that there was a parallel custody proceeding in the Cherokee Nation courts that predated his Idaho petition, or that the Cherokee Nation courts asserted jurisdiction over determinations concerning the children's custody. As a result, we affirm the district court's decision affirming the magistrate court's determination that it had subject matter jurisdiction to decide the children's custody.

**B. The magistrate court did not err in declining to order an investigation by DHW.**

In response to Lisa's petition for a temporary order for joint legal and joint physical custody of the children, Isaac filed a declaration alleging that Lisa was a negligent mother and had abused the children by spanking them with a PVC pipe. Isaac also submitted affidavits of friends and family members that he alleged corroborated his claims of abuse. Isaac repeated the accusations while testifying at the court trial.

In response, Lisa filed a declaration in which she admitted that she had spanked her children with a PVC pipe and explained that the PVC pipe was a form of discipline used by Isaac and his extended family. Lisa testified that she was uncomfortable using the PCV pipe and that she no longer used it. Lisa admitted to having once or twice left a small bruise on her children as a result of using the PVC pipe, but that she felt horrible about it and in October 2020 stopped using spanking as a form of punishment.

Isaac asserted before the magistrate court that his testimony constituted an allegation of child abuse and that Idaho Code section 32-717C required the magistrate court to refer the allegations to DHW for investigation. The magistrate court evaluated Isaac's and Lisa's testimony and concluded that Isaac's accusations did not amount to "abuse" as defined in Idaho Code section 16-1602. The magistrate court concluded that both Isaac and Lisa used similar disciplinary methods on the minor children, which Lisa believed were harsh and that once or twice left a small bruise on one of the children. The magistrate court found that the allegations did not rise to the

level of abuse under Idaho law because Lisa had justifiably explained the cause of the bruise and had not repeated the conduct.

On intermediate appeal, Isaac argued that his allegations were sufficient to trigger an investigation by DHW and the magistrate court erred by failing to halt the custody proceedings and order an investigation. The district court affirmed the magistrate court's decision to not refer the allegations to DHW. The district court concluded that the magistrate court properly considered Isaac's allegations and Lisa's explanations for her actions before finding that the allegations did not rise to the level of child abuse. The district court concluded that, sitting in its appellate capacity, it could only overturn the magistrate court's factual finding if there was clear error. The district court concluded that Isaac failed to demonstrate a clear error by the magistrate court and affirmed its decision.

Before this Court, Isaac argues that section 32-717C does not give the magistrate court discretion to make findings concerning the allegation of abuse. Instead, he argues that the statute requires that any allegation of abuse automatically triggers an investigation. Lisa responds that the magistrate court correctly determined that the allegations did not meet the definition of child abuse under Idaho law.

"The interpretation of a statute is a question of law this Court reviews de novo." *Nelson v. Evans*, 166 Idaho 815, 820, 464 P.3d 301, 306 (2020) (quoting *State v. Smalley*, 164 Idaho 780, 783, 435 P.3d 1100, 1103 (2019)). "The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language of the statute." *Id*. (quoting *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013)). "When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction." *Id*. (quoting *Dunlap*, 155 Idaho at 361–62, 313 P.3d at 17–18).

Idaho Code section 32-717C provides that a magistrate court must order DHW to investigate an allegation of child abuse made during a divorce proceeding:

> When, in any divorce proceeding or upon request for modification of a divorce decree, an allegation of *child abuse* or child sexual abuse is made, implicating either party, the court *shall* order that an investigation be conducted by the department of health and welfare.

I.C. § 32-717C (emphasis added). The use of the word "shall" in section 32-717C unambiguously requires a court to order an investigation by DHW if there is an accusation of "child abuse." The

question becomes whether Isaac's allegations constitute "child abuse." Title 32 of the Idaho Code does not define "child abuse." In analyzing this issue, the magistrate court relied on the definition of "abused" found in Idaho's Child Protective Act to determine whether Isaac's allegations constituted child abuse for purposes of section 32-717C:

(1) "Abused" means any case in which a child has been the victim of:

(a) Conduct or omission resulting in *skin bruising*, bleeding, malnutrition, burns, fracture of any bone, head injury, soft tissue swelling, failure to thrive or death, and such condition or death *is not justifiably explained*, or where the history given concerning such condition or death is at variance with the degree or type of such condition or death, or the circumstances indicate that such condition or death may not be the product of an accidental occurrence . . . .

I.C. § 16-1602(1)(a) (emphasis added).

"[S]tatutes relating to the same subject . . . must be construed together." *In re Adoption of Doe (2013-25)*, 156 Idaho 345, 350, 326 P.3d 347, 352 (2014); *see also Saint Alphonsus Reg'l Med. Ctr. v. Elmore County*, 158 Idaho 648, 653, 350 P.3d 1025, 1030 (2015) (citation omitted); *State v. Barnes*, 133 Idaho 378, 380, 987 P.2d 290, 292 (1999). The definition of child abuse in section 16-1602 was in effect when the legislature enacted section 32-717C. We "presume[] that the [l]egislature in enactment of a statute consulted earlier statutes on the same subject matter" and "that the [l]egislature knew of all legal precedent and other statutes in existence at the time the statute was passed." *City of Idaho Falls v. H-K Contractors, Inc.*, 163 Idaho 579, 584, 416 P.3d 951, 956 (2018) (citations omitted). It was appropriate for the magistrate court to refer to the definition of "abused" in section 16-1602(1)(a) when determining whether Isaac's allegations constituted allegations of "child abuse" for purposes of section 32-717C.

Applying this definition to Isaac's allegations, we hold that the magistrate court did not err when it found that Isaac's allegations did not constitute "child abuse" and therefore did not mandate a referral to DHW. "It is the province of the trier of fact to weigh conflicting evidence and testimony and to judge the credibility of witnesses." *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007). "The trial court's findings of fact in a court tried case will be upheld if they are supported by substantial and competent evidence, even if the evidence is conflicting, and will be liberally construed in favor of the judgment entered." *Id.* The magistrate court's findings of fact will only be overturned if there is not substantial and competent evidence to support the magistrate court's findings of fact. *King v. King*, 137 Idaho 438, 442, 50 P.3d 453, 457 (2002).

14

Isaac does not attack the magistrate court's finding that his allegations did not constitute abuse under Idaho law. Instead, he argues that the statute did not permit the magistrate court to make any factual finding whatsoever. Isaac's argument, taken to its logical conclusion, is that the mere use of the phrase "child abuse" by a party in a divorce action requires a referral to DHW and a stay of the divorce action until DHW completes its investigation. We disagree.

Idaho Code section 32-717C only requires a referral to DHW if the allegations are allegations of child abuse. Nothing in the statute suggests that the mere use of the phrase "child abuse" is sufficient to mandate a referral to DHW. The magistrate court acted appropriately in analyzing Isaac's allegations to determine whether they constituted allegations of child abuse. When analyzing what constituted "child abuse," the magistrate court appropriately consulted the definition of "abused" in Idaho's Child Protective Act. The magistrate court then applied that definition to the evidence concerning the allegations and determined that Isaac's allegations did not rise to the level of child abuse because Lisa credibly provided a justifiable explanation for her use of the PVC pipe in spanking and credibly testified that she stopped using that method of discipline.

We disagree with Isaac's assertion that the mere use of the phrase "child abuse" by one parent in a divorce proceeding mandates a referral to the DHW. Isaac has not challenged the magistrate court's conclusion that Lisa was credible or that she provided a justifiable explanation for the events at issue. Substantial and competent evidence exists in the record to support those findings and the magistrate court did not err in concluding that Isaac's allegations did not constitute child abuse under Idaho law. We therefore hold that the district court did not err in affirming the magistrate court's decision to not refer Isaac's accusations to the DHW for investigation.

## C. The district court did not err in affirming the magistrate court's decision awarding Lisa sole physical custody of the children.

The magistrate court awarded sole physical custody to Lisa after analyzing each of the factors prescribed in Idaho Code section 32-717. That section sets forth the factors that the magistrate court must consider when making child custody determinations:

> (1) In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
>
> > (a) The wishes of the child's parent or parents as to his or her custody;
> >
> > (b) The wishes of the child as to his or her custodian;

15

(c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;

(d) The child's adjustment to his or her home, school, and community;

(e) The character and circumstances of all individuals involved;

(f) The need to promote continuity and stability in the life of the child; and

(g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717(1).

On intermediate appeal, Isaac argued that there is a presumption that joint physical custody is awarded unless there is a finding of domestic violence. Isaac argued that the courts in Idaho, including the magistrate court in his case, were generally biased against fathers in child custody disputes. The district court affirmed the magistrate court's decision, concluding that the magistrate court properly considered the factors outlined in Idaho Code section 32-717(1). The district court concluded that the magistrate court properly took into consideration that Isaac now lived in Oklahoma and was a proven flight risk and concluded there was no evidence that the magistrate court was biased against Isaac because he was a father.

On appeal to this Court, Isaac argues that the district court erred because the magistrate court abused its discretion when it based its custody decision primarily on Isaac's statements regarding the court's jurisdiction in this matter and failed to adequately consider the other factors identified in section 32-717(1). Lisa argues that the magistrate court considered all of the statutory factors in its custody decision and gave appropriate weight to Isaac's statements that he would not follow the magistrate court's orders because he believed it lacked jurisdiction.

We review child custody determinations for an abuse of discretion. *Kelly v. Kelly*, 165 Idaho 716, 723, 451 P.3d 429, 436 (2019). "Under this standard the Court asks whether the magistrate court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Id*. (citing *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). "In a decision regarding a custody award or modification, an abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by the magistrate court's order." *Id*. (alteration and internal quotation marks omitted) (quoting *Clair v. Clair*, 153 Idaho 278, 283, 281 P.3d 115, 119 (2012)).

Further, Idaho Code section 32-717 "sets forth relevant, non-exhaustive factors to aid in making a child custody determination" and "[t]he trial judge has wide discretion when weighing these and other relevant factors." *King*, 137 Idaho at 444, 50 P.3d at 459 (citation omitted). "An overemphasis on any single factor is . . . an abuse of discretion." *Bartosz v. Jones*, 146 Idaho 449, 458, 197 P.3d 310, 319 (2008).

The magistrate court considered all seven factors in Idaho Code section 32-717(1) in granting Lisa sole physical custody. It determined in its written order that: (1) both parties wanted primary physical custody with supervised visits for the other party; (2) there was no evidence provided concerning the wishes of the minor children; (3) the children were comfortable and safe in their current living environment with Lisa and her parents, and there was little evidence regarding how the children would interact with Isaac's family living in Oklahoma; (4) the children had adjusted well to living with Lisa in Idaho Falls; (5) the children were safe and well cared for by Lisa, and Isaac stated that he refused to be bound by orders of the court and would likely attempt to flee the state with the children again, which would be disruptive to the children and cause great anguish and turmoil to Lisa and the children; (6) continuity and stability would only be achieved if Lisa had sole physical custody of the minor children because Isaac may flee the state with them; and (7) there was no evidence of domestic violence. The magistrate court weighed these factors and concluded that it was in the best interests of the children to grant sole physical custody to Lisa.

On appeal to this Court, Isaac argues that our decision in *Moye v. Moye*, 102 Idaho 170, 627 P.2d 799 (1981), requires reversal because the magistrate court overemphasized one section 32-717 factor to the exclusion of others: that Isaac refused to be bound by the orders of the magistrate court and could flee with the children again. In *Moye*, the Court reversed a magistrate court's decision to award a father custody because the magistrate court overemphasized the negative impact the mother's epilepsy had on the best interests of the children while ignoring any evidence of the father's ability to provide for the children. 102 Idaho at 172, 627 P.2d at 801.

We conclude that this case is distinguishable from *Moye*. The problem in *Moye* was that the magistrate court made its decision based on one factor and did not consider the other factors impacting the best interests of the children. *See id.* As a result, its decision to grant sole custody to the father was not properly supported. *Id.* That is not the situation in this case.

Here, the magistrate court expressly considered all the factors and appropriately gave more weight to Isaac's statements that indicated he would likely ignore any orders of the magistrate

court. By the time of the Idaho court trial, Isaac was seeking sole physical custody of the children in both the Idaho and Cherokee Nation courts. It was entirely appropriate for the magistrate court to give more weight to evidence indicating that, if the magistrate court granted joint physical custody, Isaac would likely ignore the Idaho custody order, which could result in Isaac again taking the children to Oklahoma and refusing to return them to Lisa. The magistrate court reasonably concluded that Isaac's fleeing Idaho with the children would disrupt the children's lives and not be in their best interests. Nothing in section 32-717 or this Court's caselaw suggests that the magistrate court was required to give equal weight to all the factors. To the contrary, we have held that "[t]he trial judge has wide discretion when weighing these and other relevant factors." *King*, 137 Idaho at 444, 50 P.3d at 459 (citation omitted).

Isaac argues that the magistrate court ignored his evidence that Lisa abused the children and was a negligent mother. However, as discussed above, the magistrate court did consider the evidence presented by Isaac, along with Lisa's explanation, and found that Isaac's allegations did not rise to the level of child abuse. For the reasons discussed previously, we find no error in its conclusion that Isaac's evidence did not establish Lisa had engaged in child abuse as defined in section 16-1602(1)(a). We affirm the district court's decision affirming the magistrate court's decision awarding Lisa sole physical custody.

**D. The district court erred when it affirmed the magistrate court's decision awarding joint legal custody while at the same time giving Lisa final decision-making authority on all matters.**

In its written decision following trial, the magistrate court awarded Isaac and Lisa joint legal custody while also ordering that, if the parties could not agree on an issue, Lisa had final decision-making authority:

> The issue of legal custody is before the court. The court maintains that the parties should be required to ". . . share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children." Idaho Code § 32-717B. The court concludes that the parties are capable of so doing, so long as they both continue to put the best interest of the minor children in front of their own interests. The court concludes that it is important for both parties to be apprised of actions that affect the minor children in these areas. PROVIDED, HOWEVER, if the parties do not agree on issues relating to the health, education and general welfare of the minor children *Lisa shall have the final say and determination as to how to proceed, at all times, on all such issues, at her sole discretion, even over Isaac's objection*.

Under this condition, only, the court concludes that it is in the best interest of the minor children to maintain between the parties *joint legal custody* of the minor children.

(Alteration in original; emphasis added.)

On appeal to the district court, Isaac argued that the magistrate court erred by "redefining" joint legal custody as sole legal custody by giving Lisa final decision-making authority on all issues relating to the children. The district court affirmed the magistrate court's order concerning legal custody after concluding that the magistrate court had actually awarded Lisa sole legal custody. The district court concluded that the magistrate court correctly considered the factors under section 32-717(1) to determine that sole legal custody was in the best interests of the children.

On appeal to this Court, Isaac argues that the district court erred because the magistrate court abused its discretion by awarding the parties joint legal custody and then giving Lisa final decision-making authority. Isaac argues that doing so essentially gave Lisa sole legal custody. Lisa concedes that the magistrate court effectively gave her sole legal custody but argues that it was within the magistrate court's discretion to do so. Lisa asserts that the magistrate court's findings concerning the best interests of the children as related to sole physical custody also support its decision effectively awarding her sole legal custody.

"In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." I.C. § 32-717(1). "The court may award either joint physical custody or joint legal custody or both as between the parents or parties as the court determines is for the best interests of the minor child or children." I.C. § 32-717B(1). "Joint legal custody" is defined as "a judicial determination that the parents or parties are required to share the decision-making rights, responsibilities and authority relating to the health, education and general welfare of a child or children." I.C. § 32-717B(3). "[A]bsent a preponderance of the evidence to the contrary, there shall be a presumption that joint custody is in the best interests of a minor child or children." I.C. § 32-717B(4). "Since the children's best interests are the paramount consideration, a court may decline to award joint custody if doing so will serve the children's best interests." *Danti v. Danti*, 146 Idaho 929, 935, 204 P.3d 1140, 1146 (2009) (citing I.C. § 32-717B(4)). "If the court declines to enter an order awarding joint custody, the court shall state in its decision the reasons for denial of an award of joint custody." I.C. § 32-717B(1).

In *Mahnami v. Mahnami*, the Idaho Court of Appeals reversed a custody order that ordered joint legal custody but also ordered that the mother had final decision-making authority regarding the child's health, education, and general welfare. 156 Idaho 338, 325 P.3d 679 (Ct. App. 2014). The Court of Appeals concluded that the magistrate court erred because the magistrate court had in effect "redefined" joint legal custody to give the mother sole legal custody, which contradicted the definition of joint legal custody in Idaho Code section 32-717B(3). *Id.* at 343–44, 325 P.3d at 684–85. We note that the presiding magistrate judge in this case is the same magistrate judge who was reversed in *Mahnami* and that the order in this case is nearly identical to the one that was reversed in *Mahnami*.

We agree with Isaac that the magistrate court abused its discretion because its decision is inconsistent with Idaho Code section 32-717B and the Idaho Court of Appeals' decision in *Mahnami*. Section 32-717B(3) defines joint legal custody as shared decision-making concerning the health, education, and general welfare of the children. Awarding sole decision-making authority to Lisa is the opposite of this definition.

However, while there is a statutory presumption that joint legal custody is in the best interests of the children, a magistrate court may award sole legal custody if a preponderance of the evidence indicates that sole legal custody is in the best interests of the children. *See* I.C. § 32-717B(1), (4). We agree with Lisa that the magistrate court's findings of fact that support its award of sole physical custody to Lisa would also appear to support an award of sole legal custody to Lisa. We also agree with the district court that it appears that the magistrate court intended to award Lisa sole legal custody. Regardless of its intentions, however, the magistrate court's decision concerning legal custody is inconsistent with Idaho Code section 32-717B, which requires the court to "state in its decision the reasons for denial of an award of joint custody."

We hold that the district court erred in affirming that portion of the magistrate court's decision concerning legal custody because the magistrate court's decision failed to comply with section 32-717B. We therefore reverse the district court's order and remand to the district court with instructions to reverse and remand to the magistrate court for clarification of its decision concerning legal custody.

**E. The district court erred in affirming the magistrate court's child support order because the magistrate court failed to explain its reasons for backdating child support.**

The magistrate court ordered Isaac to pay $315 per month in child support beginning in January 2021, the first full month after which Isaac commenced this action. The child support

20

amount was calculated based on Lisa having ninety percent physical custody and Isaac having ten percent. The record suggests that Isaac's ten percent came from the magistrate court's order allowing Isaac visitation rights at the discretion of Lisa. The magistrate court did not explain why it backdated the child support payments.

On appeal to the district court, Isaac argued that the magistrate court erred by backdating child support because Isaac had joint physical custody of the children between January and September 2021. Additionally, Isaac argued that the magistrate court did not make written or specific findings on the record for why it was departing from the Idaho Child Support Guidelines, which guide the award of child support in custody disputes.

The district court affirmed the magistrate court's order backdating child support. The district court concluded that child support payments could be backdated when expenses have actually been paid or incurred by the party seeking child support. It concluded that both parties paid expenses for the children after Isaac filed the divorce petition, so it was appropriate for the magistrate court to backdate child support. The district court found it inconsequential that Isaac, at times during the proceedings, had joint custody of the children because there was also a time during the proceedings that Lisa had sole custody over the children and thus incurred additional costs.

Isaac asserts two arguments for why the magistrate court's child support award was erroneous and for why the district court erred in affirming it. First, Isaac argues that the magistrate court impermissibly modified child support in the absence of a motion for modification. This argument hinges on Isaac's characterization of the magistrate court's oral order at the June 16, 2021, hearing, which did not award child support, as the original child support determination. He refers to the magistrate court's written decision following the trial, which ordered Isaac to pay a monthly amount backdated to January 1, 2021, as a "modification" of its prior "decision" at the June 16, 2021, hearing to not award child support. Isaac contends that this was erroneous because no party had requested a modification of child support. *See* I.C. § 32-709(1) (providing that child support decrees can only be modified by a "motion for modification and only upon a showing of a substantial and material change of circumstances"). Lisa responds that the magistrate court's written order following the trial did not modify child support payments but was ordering child support in the first instance.

21

We reject Isaac's modification argument because it is based on a mischaracterization of the record. The magistrate court did not enter an order regarding child support at the June 16, 2021, hearing. Instead, it expressly stated that it was not ruling on child support at that hearing because there was not clear evidence of the parties' incomes. It ordered each party to pay their own living expenses. The magistrate court's written decision following the court trial was not a modification because there was no prior child support order in place. Isaac's argument to the contrary is without merit.

Next, Isaac contends that the magistrate court erred in backdating child support to January 1, 2021, because Isaac had primary custody of the children from December 2020 to June 2021, and then he and Lisa had a 50/50 custody schedule until the magistrate court entered its September 23, 2021, temporary order granting Lisa sole physical custody. Isaac argues that it is unfair for him to have to pay child support to Lisa for a timeframe when he had either primary physical custody or shared custody with Lisa 50/50.

Lisa responds that the magistrate court did not err because Idaho law authorizes an award of child support from the filing date of a petition. Lisa argues that the court did not abuse its discretion because Isaac was the one who requested child support payments to begin in January 2021 in his divorce petition—although he requested that Lisa pay him child support. Lisa further asserts that she is entitled to have the child support backdated because she incurred expenses related to the children during the December 2020 to June 16, 2021, timeframe, including traveling to Oklahoma to recover the children following the Cherokee Nation court's dismissal of the guardianship petition.

"The magistrate court's award of child support is reviewed by this Court under an abuse of discretion standard." *Henderson v. Smith*, 128 Idaho 444, 451, 915 P.2d 6, 13 (1996). "In the absence of a clear showing of an abuse of such discretion, the awards made by the trial court will not be disturbed on appeal." *Brammer v. Brammer*, 93 Idaho 671, 675, 471 P.2d 58, 62 (1970). There is a "strong public policy favoring fair and adequate child support awards that are in the best interests of the children." *Garner v. Garner*, 158 Idaho 932, 936–37, 354 P.3d 494, 498–99 (2015).

Idaho Code section 32-706(1) gives a trial court authority to "order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for his or her support and education until the child is eighteen (18) years of age . . . after considering all relevant factors . . . ." I.C. § 32-706(1). Section 32-706(1) then provides a list of factors that a court should

22

consider in awarding child support. I.C. § 32-706(1)(a)–(f). While the statute does not expressly permit child support to be awarded retroactively, its language also does not mandate that the award of child support only be prospective from the date of the child support order. In short, the statute is silent as to whether child support can be awarded back to the date of the filing of the petition.

Lisa argues that we should interpret section 32-706 to permit the backdating of child support because we have held as much in connection with orders modifying the amount of child support, citing *Levin v. Levin*, 122 Idaho 583, 589, 836 P.2d 529, 535 (1992), and *Rohr v. Rohr*, 128 Idaho 137, 142, 911 P.2d 133, 138 (1996). The caselaw Lisa cites, however, relies on the language of Idaho Code section 32-709, which governs the *modification* of a child support order and permits an order modifying child support to be made retroactive to the filing date of the motion for modification. Because of this statutory difference, the decisions Lisa cites do not govern the issue we address here: whether the trial court can backdate its *first* order for child support. However, this question is answered by other provisions of Idaho law.

The parents' joint duty to support their children exists during the pendency of the divorce proceedings. I.R.F.L.P 120(c)(1) (2021). A trial court has authority to "order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for his or her support and education until the child is eighteen (18) years of age . . . ." I.C. § 32-706(1). We conclude that because parents have a joint duty to support their children during the divorce proceedings, the trial court's authority to order parents to pay a reasonable amount of child support extends to the pendency of the divorce proceeding.

The calculation of a reasonable amount of child support is governed by Idaho's Child Support Guidelines, which "are premised on the basic principle that both parents should share legal responsibility for supporting their child or children in proportion to their Guidelines Income." *Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995) (internal quotation marks and citation omitted). Child support payments may be adjusted under the Child Support Guidelines based on the actual percentage of time a parent has physical custody of the child. I.R.F.L.P 120(i)(3)–(6) (2021). There is a rebuttable presumption that the amount of the child support awarded shall be the amount calculated under the Child Support Guidelines, unless application of the guidelines would be unjust or inappropriate. I.C. § 32-706(5). If a court departs from the Child Support Guidelines, the court must make a written or specific finding on the record that the

23

application of the guidelines would be unjust or inappropriate in the particular case before the court. *Id*.

In this case, the magistrate court ordered Isaac to pay Lisa $315.42 per month, which was based in part on Lisa having ninety percent custody of the children and Isaac having ten percent custody. Without explanation, the magistrate court ordered Isaac to pay this amount dating back to January 1, 2021. The magistrate court's custody order was dated March 23, 2022. The record indicates that Isaac had more than ten percent custody between January 1, 2021, and September 13, 2021:

- From December 24, 2020, to June 16, 2021: Isaac had physical custody of the children during the school week, and Lisa had physical custody on the weekends and any holidays. Lisa was also able to visit the children after school hours.

- From June 16, 2021, to September 13, 2021: Isaac and Lisa shared custody 50/50 pursuant to the magistrate court's temporary order dated June 16, 2021.

- From September 13, 2021, to the present: The children remained with Lisa through trial pursuant to the magistrate court's orders awarding Lisa sole physical custody.

Isaac's increased percentage of custody during the January 1 to September 13 timeframe would likely result in a different child support amount under the Child Support Guidelines. The magistrate court did not explain why it ordered Isaac to pay an amount that likely deviated from the Guidelines amount for that timeframe. We recognize that the magistrate court may have intentionally deviated from the Guidelines amount to compensate Lisa for other expenses she incurred during the timeframe. However, without any explanation for the backdated child support, we cannot conclude that the magistrate court exercised reason in its decision. *Davis v. Tuma*, 167 Idaho 267, 279, 469 P.3d 595, 607 (2020) ("This Court is unable to review a ruling that was not clearly made or supported by legal reasoning. As a result, the district court abused its discretion . . . .").

The district court did not cite anything from the record in support of its conclusion that the magistrate court backdated support to compensate Lisa for other amounts she incurred. In the absence of any explanation by the magistrate court for why it backdated child support in an amount that deviated from the Guidelines, the district court erred in affirming its decision. We therefore reverse the district court's decision affirming the magistrate court on this point and remand for further proceedings consistent with this opinion.

**F. We award Lisa partial attorney fees on appeal.**

Isaac seeks attorney fees pursuant to Idaho Code sections 12-120 and 12-121. However, Isaac provides no argument on why attorney fees should be awarded in his favor. A party who fails to support their request with argument or caselaw is not entitled to an award of fees. *O'Holleran v. O'Holleran*, 171 Idaho 671, 677, 525 P.3d 709, 715 (2023). Because Isaac failed to support his request with argument, we decline to award attorney fees.

Lisa seeks attorney fees on appeal pursuant to Idaho Code section 12-121, as well as Idaho Code sections 32-704 and 32-705. "[A]ttorney fees may be awarded to a prevailing party under section 12-121 if the Court believes that the proceeding was brought, pursued, or defended frivolously, unreasonably or without foundation." *Kelly v. Kelly*, 171 Idaho 27, 49, 518 P.3d 326, 348 (2022). "When awarding fees under section 12-121, apportionment of attorney fees is appropriate for those elements of the case that were frivolous, unreasonable, and without foundation." *Id.* (internal quotation marks and alteration omitted) (quoting *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 183, 395 P.3d 393, 402 (2017)).

We conclude that Lisa is entitled to a partial award of attorney fees on appeal under section 12-121 for Isaac's subject matter jurisdiction argument. Isaac's argument cited the UCCJEA, but then ignored his own concession in his divorce petition that Idaho was the children's home state. Isaac failed to provide any evidence that the Cherokee Nation court had assumed jurisdiction over the custody matter. Instead, the evidence indicates that the Cherokee Nation court repeatedly declined to assume jurisdiction because Idaho was the children's home state. Despite this, Isaac continued to assert his jurisdictional argument on appeal. We conclude that Isaac unreasonably pursued this argument and failed to properly support it on appeal. We therefore award Lisa her reasonable attorney fees incurred in responding to Isaac's jurisdictional argument. However, we do not award Lisa attorney fees under Idaho Code section 12-121 for Isaac's remaining arguments in this appeal. Isaac made colorable legal arguments on the issues, supported them with citations to the record, and prevailed on two of them.

Turning to Lisa's other basis for fees, section 32-704(3) provides that a court may award attorney fees in divorce proceedings "for the cost . . . of maintaining or defending any [divorce] proceeding under this act and for attorney's fees . . . ." I.C. § 32-704(3). In making this determination, the court considers the financial resources of both parties and the factors set forth

in Idaho Code section 32-705. *Id*. "To be awarded attorney fees under section 32-704, a party need not be a prevailing party." *Reed v. Reed*, 157 Idaho 705, 718, 339 P.3d 1109, 1122 (2014).

We take this opportunity to reemphasize that seeking attorney fees pursuant to section 32-704(3) is a fact sensitive inquiry based on evidence that should be presented to the trial court in the first instance, not to this Court on appeal. *See Reed*, 137 Idaho at 61, 44 P.3d at 1116 ("The decision whether to award attorney fees under [section 32-704] is a matter of discretion for the trial judge, upon consideration of the factors contained in this section and in I.C. § 32–705"); *Kelly v. Kelly*, 171 Idaho 27, 48, 518 P.3d 326, 347 (2022). A motion before the trial court is the proper mechanism by which a party should seek attorney fees to defend or prosecute an appeal pursuant to section 32-704(3). *See Wilson v. Wilson*, 131 Idaho 533, 537, 960 P.2d 1262, 1266 (1998). The only occasion in which this Court will consider awarding attorney fees pursuant to section 32-704(3) in the first instance is the rare occurrence when a party seeks to invoke this Court's original jurisdiction by asking for a writ in aid of our appellate jurisdiction. *See Brashear v. Brashear*, 71 Idaho 158, 165, 228 P.2d 243, 247 (1951); *Bedke v. Bedke*, 56 Idaho 235, 53 P.2d 1175, 1176 (1935). This has not occurred here, so we leave any determination of attorney fees pursuant to Idaho Code section 32-704(3) to the discretion of the trial court.

## V.    CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We award Lisa her reasonable attorney fees for responding to Isaac's jurisdictional argument. As both parties prevailed in part, neither party is awarded costs on appeal.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.